(No. 71051.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SHERRY WHITERS, Appellee.

*Opinion filed February 20, 1992.*

438

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and Cecil A. Partee and Jack O'Malley, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Randall Roberts, Solita L. Pandit and Michael P. Latz, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Rita A. Fry and Alison Edwards, Assistant Public Defenders, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Defendant, Sherry Whiters, was charged with murder in connection with the stabbing death of Cecil Barker. Following a jury trial, defendant was found guilty of voluntary manslaughter. The appellate court reversed and remanded the matter for a new trial, finding that defendant was entitled to an instruction on involun-

tary manslaughter and that she was prejudiced by the improper character evidence regarding the victim. (204 Ill. App. 3d 334.) The State appeals. We affirm.

The circumstances of the crime are reported in detail in the appellate court opinion. We include a brief summary of the facts revealed at trial. Defendant and Barker had an intimate relationship, having lived together off and on for about nine months. On February 13, 1987, Barker had an altercation with another girlfriend and was arrested for battery. The next day, defendant went to the police station to get Barker released. The two travelled by bus from the police station to defendant's apartment. Barker spent the night, left the next morning, and returned to defendant's apartment that afternoon. Upon Barker's arrival, the two began arguing, and the quarrel continued as defendant prepared to go out on a date with another man. Defendant testified that Barker pushed her, forced her to have nonconsensual sex (a fact contradicted by defendant's post-arrest statement), ripped her phone from the wall and threatened to "kick her ass." At one point, defendant grabbed a kitchen knife and pointed it at Barker. As he moved toward her, she stabbed him in the abdomen. Defendant immediately screamed that she did not mean it, and called an ambulance.

During the trial, defendant attempted to testify to comments Barker made on the bus ride from the police station regarding the events leading up to his arrest. The prosecution objected and the comments were excluded as hearsay. Additionally, defendant objected to testimony by the victim's family and friends regarding his good character but was overruled. Finally, the trial court denied defendant's request for an involuntary manslaughter instruction. Defendant was found guilty of voluntary manslaughter.

The State first argues that the appellate court incorrectly determined that defendant was entitled to a jury instruction on involuntary manslaughter. Involuntary manslaughter is defined as follows:

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***." (Ill. Rev. Stat. 1985, ch. 38, par. 9—3(a).)

Recklessness is defined in section 4—6 of the Criminal Code of 1961:

"A person is reckless or acts recklessly, when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." Ill. Rev. Stat. 1985, ch. 38, par. 4—6.

The appellate court concluded that the record contains evidence of acts by defendant, which, if believed by the jury, could reasonably be ascertained to be reckless conduct, and which caused Barker's death. Specifically, it mentioned that defendant and Barker were arguing, that Barker ripped the phone from the wall, that defendant grabbed the kitchen knife and held it at her waist, and that she screamed that she did not mean to hurt him and called for help immediately following the incident. The appellate court correctly held that a determination of whether any of the above-mentioned conduct constituted recklessness was a question of fact for the jury and that the jury should have been instructed on involuntary manslaughter.

The State also contends that defendant cannot claim self-defense, an intentional act, and at the same time have the jury instructed on involuntary manslaughter.

We note that where there is evidentiary support for an involuntary manslaughter instruction, such an instruction is not prohibited by a claim of self-defense. *People v. Everette* (1990), 141 Ill. 2d 147.

The next argument raised by the State is that the State's evidence of decedent's good character was properly admitted. Defendant attacked Barker's character in her opening statement but offered no supporting evidence. The State contends that the defendant's opening statement, implicating defendant's bad character, opened the door for the State's evidence concerning the victim's good character. The appellate court held that any character or reputation evidence concerning Barker was improperly admitted, as defendant had not first offered any *evidence* of Barker's character. It stated that while defendant's opening statement included references to Barker's jealous and violent nature, the opening statement is not evidence, and therefore, comments made therein do not open the door for character evidence during the case in chief. We disagree.

During opening argument, defense counsel stated:

"You are going to hear evidence that Cecil [Barker] had two serious problems. One, he drank way too much, and when he drank he became violent. And number two, although he was seeing other women at this time, he had a violent and jealous temper, and when any other women that he was seeing were seeing other men, or if he believed they were seeing other men, he became extremely violent..And when these two problems intertwined, drinking and a jealous rage, he became a violent, violent man."

The well-recognized and rational principle that the prosecution may put on reputation evidence to prove the victim's peaceful character if defendant has first attacked the victim's character for peacefulness (*Kelly v. People* (1907), 229 Ill. 81) must apply to the statements made in

defendant's opening statement. To hold otherwise would enable the defendant to get away with using her opening statement to vilify the victim's character and thus poison the water without offering any supporting evidence. An evidentiary response from the State is appropriate under the circumstances. To hold otherwise would invite repetition of an improper practice and would defeat the truth-seeking function of a trial.

We next address two other issues raised in the appellate court, as they will arise on remand. First, defendant argues that the trial court erred in instructing the jury with a non-IPI instruction and an incomplete set of verdict forms. Rather than submitting separate guilty and not guilty verdict forms to the jury on both murder and voluntary manslaughter, the trial court sought to avoid conflict and instructed the jury pursuant to the original IPI Criminal 2d No. 26.01 (Illinois Pattern Jury Instructions, Criminal, No. 26.01 (2d ed. 1981)), which calls for three verdict forms. The appellate court correctly determined that the trial court did not abuse its discretion, as a trial court is not obligated to give a not guilty verdict form for each charge where inconsistent verdicts and juror confusion could result from the use of separate forms. *People v. Ford* (1987), 163 Ill. App. 3d 497; *People v. Hoffer* (1984), 122 Ill. App. 3d 13, *aff'd* (1985), 106 Ill. 2d 186.

Finally, defendant argues that she was denied a fair trial because the trial court excluded her testimony regarding the conversation she had with Barker on the bus following his arrest for battery. Defendant contends that the testimony was admissible to demonstrate Barker's state of mind and the effect the conversation had on her state of mind. The appellate court concluded that the trial court had properly excluded the testimony, as hearsay. Specifically, the appellate court found that the testimony was not admissible to show Barker's state of mind

because there was no reasonable probability that the testimony was truthful. Further, it found that the testimony was too remote and irrelevant to defendant's state of mind, as her subsequent actions indicated that she did not feel threatened by Barker as a consequence of the statements. We do not agree.

The bus conversation was offered, in part, as one of several factors contributing to defendant's reasonable belief in the need for self-defense. Perception of danger is always material and relevant to defendant's belief that the use of deadly force is justified. (*People v. Davis* (1963), 29 Ill. 2d 127.) It is defendant's perception of danger, not the actual peril, which is dispositive. (*People v. Shipp* (1977), 52 Ill. App. 3d 470.) Where evidence tends to show the reasonableness of defendant's belief in the need for self-defense, the lapse of time or presence of other intervening circumstances should affect only the weight, not the admissibility of such evidence. (*People v. Evans* (1982), 104 Ill. App. 3d 598.) In the instant case, Barker related the details of his violent dispute with another woman whom he believed was dating another man. The next afternoon, when defendant received a telephone call from another man, Barker ran naked into the kitchen and ripped the phone from the wall. Defendant's perception of danger at the moment Barker confronted her in her kitchen may very well have been shaped by what Barker told her he had done, or tried to do, to another woman the day before. Under the circumstances, the bus conversation was not too remote to relate to defendant's state of mind, and should have been admitted.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*