(866 P.2d 1083)
No. 68,809
68,810
68,811

STATE OF KANSAS, *Appellee*, v. CRUZ MANZANARES, *Appellant*.

Opinion filed January 14, 1994.

*M. Kristine Paredes*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Robert M. Miles*, special prosecutor, and *Robert T. Stephan*, attorney general, for appellee.

Before GREEN, P.J., BRAZIL, J., and R. DAVID LAMAR, District Judge, assigned.

LAMAR, J.: Cruz Manzanares appeals his jury convictions of aggravated battery, reckless driving, and criminal damage to property. He also appeals his sentences on the above convictions ·as well as his sentence on his plea of guilty to the charge of making a terroristic threat. Manzanares also appeals the trial court's denial of probation.

Manzanares raises four issues on appeal. He claims:

(1) The district court failed to instruct on battery as a lesser included offense of aggravated battery.

(2) The crimes of aggravated battery and reckless driving were multiplicitous.

(3) The trial court erred by failing to give a cautionary instruction on the credibility of eyewitness identification testimony.

(4) The trial court violated his Fifth Amendment privilege against self-incrimination at the sentencing and in denying his motion for probation.

On November 5, 1989, Marie Manzanares filed for divorce from Manzanares, at which time Marie was granted a restraining order against her husband.

On November 18, 1989, Manzanares was to exercise visitation with the couple's two children at 4:00 p.m. Manzanares, however, took the day off from work and went to the baby-sitter's home to see the children. The children were not there because Marie had taken them to a different baby-sitter. Manzanares went next to Marie's place of employment to inquire about the children and informed Marie he was able to spend the entire day with them. Manzanares pulled his car in behind Marie as she parked her car. Marie told Manzanares he could not see the children until 4:00 p.m. As a result of this information, a disagreement occurred concerning interpretation of the visitation language in the divorce papers. Manzanares then retrieved the divorce documents from his van, and when he returned to Marie's car, she rolled up her window, closed her door, and refused to have further discussion with him. Manzanares began to pound Marie's car, and Marie drove off, intending to go to the police station.

Manzanares followed Marie in his van at speeds of 50 to 60 miles per hour and in close proximity to Marie's vehicle. Both vehicles ran a red light at the intersection of Highways 54 and 83. Marie temporarily lost control of her car and narrowly missed the gas pumps at a service station. She testified she lost control at this juncture because Manzanares' van struck the rear of her car. However, she regained control and resumed her attempt to reach the police station.

The chase continued with Manzanares' van striking the rear of Marie's car as the vehicles approached the railroad tracks. Subsequently, Manzanares rammed the van into the side of Marie's car, causing her car to leave the street and come to rest two to three feet from the doors of the city hall. Manzanares' van came to rest after striking a telephone pole. Two eyewitnesses testified that Manzanares' maneuver which caused Marie to leave the road appeared to be intentional.

Manzanares was convicted by a jury of aggravated battery and reckless driving stemming from the November 18 episode. He was sentenced to 4 to 10 years on the aggravated battery charge and 10 days in jail on the reckless driving charge, with the sentences to run concurrently.

On the evening of December 4, 1989, an unoccupied black Camaro belonging to Juan Perez was hit and damaged as it was parked on South Cain Street in Liberal, Kansas. An eyewitness testified that a male of Hispanic descent driving a van matching Manzanares' backed into the Camaro and pushed it into the yard. Manzanares is American Indian. Manzanares' daughter testified that he told her he had located the car belonging to Juan Perez and had wrecked it.

Manzanares, who was on bond for the November incident, was arrested for criminal damage to property, convicted by a jury on that charge, and sentenced to 1 to 3 years in prison, with the sentence to run consecutive to the sentence for aggravated battery.

Manzanares pled guilty to making a terroristic threat against Juan Perez. This incident occurred on December 17, 1989. He was sentenced to a term of 1 to 3 years. The sentence was ordered to run consecutive to the sentences for aggravated battery and criminal damage to property.

Manzanares' application for probation and modification of sentence was denied in each case.

Manzanares first argues the district court erred in failing to instruct the jury on battery as a lesser included offense of aggravated battery. He claims the jury could have found he lacked the necessary intent to commit aggravated battery. We disagree.

"Battery" is defined as "the unlawful, intentional touching or application of force to the person of another, when done in a

rude, insolent or angry manner." K.S.A. 21-3412. Aggravated battery is the unlawful touching or application of force to a person with intent to injure that person, and when done with a deadly weapon or in any manner whereby great bodily harm, disfigurement, dismemberment, or death can be inflicted. K.S.A. 21-3414(c).

The significant difference between the two offenses is that aggravated battery requires an intent to injure plus one of the enumerated alternative elements—in this case, the use of a deadly weapon—while battery merely requires the intentional application of force to another person when done in a rude, insolent, or angry manner. *State v. Warbritton*, 211 Kan. 506, 508, 506 P.2d 1152 (1973).

The court instructed the jury that to establish the charge of aggravated battery, the prosecution must prove that Manzanares intentionally touched or applied force to the person of Marie, that it was done with the intent to injure Marie, and that it was done with a deadly weapon. A "deadly weapon" was defined as "[a] weapon dangerous to life or likely to produce bodily injury from the use made of it or with which death may easily and readily be produced." The court's instructions did not include a lesser included offense of battery.

Under K.S.A. 21-3107(3), the court has an affirmative duty to instruct on all lesser included offenses supported by the evidence. Evidence supporting the instruction must be considered in the light most favorable to the defendant. The evidence may be weak and based only on the testimony of the defendant. The test is whether the evidence could, within reason, cause a jury to convict the defendant of the lesser charge. *State v. Wagner*, 248 Kan. 240, 245-46, 807 P.2d 139 (1991).

Manzanares contends the court should have instructed on the lesser included crime of battery because of testimony offered by the prosecution and the defense. He cites *State v. Patterson*, 243 Kan. 262, 267, 755 P.2d 551 (1988), and the recent case of *State v. Coleman*, 253 Kan. 335, 856 P.2d 121 (1993). We find no basis for this contention. Neither side offered a version of the facts to support the lesser included crime of battery.

The substance of Manzanares' testimony is that any contact between his van and Marie's car was accidental. Manzanares did

not testify that he intentionally caused his van to strike Marie's car. His testimony does not provide a positive version of the offense contrary to that presented by the State. Manzanares' testimony indicates that the offense of battery did not occur. He denied hitting Marie's car at the gas station and claimed she lost control of her car. Although he admits striking Marie's car near the railroad tracks, he claimed that the cause of the impact was because he was too close to her vehicle when she slammed on her brakes upon approaching a dip in the road. He claims he lost control of the van when he later rammed Marie's car, causing her to leave the road.

Manzanares also claims error for failure to instruct on the lesser included offense of battery because the jury could have found that an automobile was not a deadly weapon. Manzanares cites *State v. Colbert*, 244 Kan. 422, 426, 769 P.2d 1168 (1989), for the principle that an objective test is required to determine if an instrument is a deadly weapon and that an automobile is thus not a deadly weapon as a matter of law. *Colbert* was a case in which the trial court had given an aggravated battery instruction in which a firearm was stated to be a deadly weapon as a matter of law. The Supreme Court reversed the trial court on this issue and found that for the purpose of the aggravated battery statute, the determination of whether an object is a deadly weapon is made on an objective basis and is a question for the jury. The *Colbert* court held that the trial court's statement the firearm was a deadly weapon, as a matter of law, usurped the function of the jury. 244 Kan. at 426-27.

This case is distinguishable from *Colbert*. Here, the trial court did not give an instruction that Manzanares' van was a deadly weapon as a matter of law. The instruction listed the requirement that the State prove Manzanares used a deadly weapon in the offense and provided a definition for the term "deadly weapon" consistent with K.S.A. 21-3414(c).

The determination that the van was a deadly weapon was properly made by the jury. Had the jury determined the van was not a deadly weapon under the statute, Manzanares would have been found not guilty of the charge.

The second issue presented is whether the crimes of reckless driving and aggravated battery were multiplicitous.

Multiplicity in a criminal pleading is the charging of two or more counts where only a single criminal act is involved. K.S.A. 21-3107(1) provides that an individual may be charged with multiple violations arising from a single transaction when the same conduct may establish the commission of more than one crime. The principles for determining whether charges are multiplicitous are: (1) A single offense may not be divided into separate parts; generally, a single wrongful act may not furnish the State with the basis for more than one criminal prosecution. (2) If each offense charged requires proof of a fact not required in proving the other offense, the offenses do not merge. (3) Where offenses are committed separately, at different times and at different places, they cannot be said to arise out of a single wrongful act. *State v. Cathey*, 241 Kan. 715, 718-19, 741 P.2d 738 (1987).

Applying these principles to the facts of this case, the offenses of aggravated battery and reckless driving are not multiplicitous. The aggravated battery charge was based on Manzanares' act of ramming his van into Marie's car with the alleged intent to hurt her. The reckless driving charge was based on Manzanares' operating his vehicle in willful or wanton disregard for the safety of persons or property.

While pursuing Marie, Manzanares ran a red light, drove over the speed limit, crossed over the center line, and hit a pole. These acts took place separately, in time and place, from Manzanares' act of ramming Marie's car. The reckless driving charge required only proof that Manzanares operated his vehicle in willful disregard for the safety of people and property. The charge of aggravated battery required proof of Manzanares' intent to injure Marie with a deadly weapon—facts not required to prove reckless driving.

Manzanares' additional activity in the operation of his van prior to ramming Marie's car supports an independent charge of reckless driving. The charges were not multiplicitous.

The next issue is whether the trial court erred in failing to give a cautionary instruction advising the jury of the factors to be considered in weighing the eyewitness identification.

At Manzanares' trial on the charge of criminal damage to property, Stella Taylor testified that on the evening of December 4, 1989, a black Camaro was parked across the street from her house.

Some time after 9:00 p.m., she heard a noise which sounded like a car striking another car. She looked out of her window and saw a light-colored short van backed up to Juan Perez' black Camaro. Stella testified she went outside and observed that the Camaro had been pushed up into the yard and damaged. About five to seven minutes after she heard the noise, she called the police.

Stella had observed the light-colored van earlier in the day. At that time, the van had slowed down, almost to a stop, as it passed the house where the Camaro was parked. The van then sped away. Stella remembered the van because it looked like it had been in a demolition derby. The side doors and the front of the van were damaged. The police took photographs of Manzanares' van the day after the incident, and Stella identified the van as the vehicle that damaged the black Camaro.

Stella testified the driver of the van was a male of Hispanic descent. She could not, however, identify Manzanares as the driver of the van.

The trial court did not include a cautionary instruction on eyewitness identification. Manzanares did not request that the instruction be given and did not object to the failure to give the instruction.

Whenever eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury of the factors to be considered in weighing the credibility of the eyewitness testifying. *State v. Warren*, 230 Kan. 385, Syl. ¶ 1, 635 P.2d 1236 (1981).

Manzanares claims Stella's eyewitness identification testimony was crucial to the State's case because it was the only evidence placing him near the black Camaro. Manzanares questions the reliability of the identification because Stella observed the van through her window when the van was pulling away from the damaged Camaro.

Absent an objection at trial to the failure to give a jury instruction, an appellate court may reverse only if the trial court's failure to give an instruction is clearly erroneous. The failure to give the jury instruction is clearly erroneous only if the appellate court reaches a firm conviction that, if the trial error had not occurred, there was a real possibility the jury would have re-

turned a different verdict. *State v. Land,* 14 Kan. App. 2d 515, Syl. ¶¶ 2, 3, 794 P.2d 668 (1990).

Important here is that Stella never claimed to identify Manzanares except to indicate that a Hispanic male was the driver of the van. Stella only identified the van. The reliability of her eyewitness identification of Manzanares' distinctively damaged van cannot be seriously questioned.

In addition, Stella's testimony was not the only testimony concerning Manzanares and his damaged van. Yvonne Herrera, Manzanares' daughter, testified that her father told her he had wrecked Perez' car that evening and that he had been where the Camaro was parked earlier that day.

This court cannot reach a firm conviction that there was a real possibility that the jury would have returned a different verdict if the instruction had been given. We conclude the trial court did not err in failing to give the cautionary eyewitness identification instruction.

The final issue is whether the trial court violated Manzanares' Fifth Amendment privilege against self-incrimination at sentencing and at the hearing on Manzanares' motion for probation.

Aggravated battery is a class C felony. K.S.A. 21-3414. The minimum sentence for a class C felony is 3 to 10 years. The maximum is 5 to 20 years. K.S.A. 21-4501(c). The trial court sentenced Manzanares to 4 to 10 years.

The sentencing judge alone determines the appropriate sentence in a case. The sentencing judge determines the sentence by exercising his or her best judgment, common sense, and judicial discretion after a consideration of all the reports, the defendant's background, the facts of the case, and public safety. A sentence within the statutory limits will not be disturbed on appeal, provided it is within the realm of discretion of the trial court and is not a result of partiality, prejudice, oppression, or corrupt motive. *State v. McDonald,* 250 Kan. 73, Syl. ¶ 4, 824 P.2d 941 (1992).

The test on appellate review of alleged trial court abuse of discretion is whether no reasonable person would agree with the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then the trial court did not abuse its discretion. *State v. Wagner,* 248 Kan. at 242.

Each sentencing case must be considered on its facts. *State v. McDonald*, 250 Kan. 73, Syl. ¶ 6. Penal sanctions imposed vindictively, however, as official retaliation for a defendant's exercise of constitutional rights, cannot be sustained. *State v. Greenberg*, 4 Kan. App. 2d 403, 411, 607 P.2d 530, *rev. denied* 228 Kan. 807 (1980) (citing *North Carolina v. Pearce*, 395 U.S. 711, 723-24, 23 L. Ed. 2d 656, 89 S. Ct. 2072 [1969]).

In sentencing Manzanares on the charge of aggravated battery, the trial court stated:

"Mr. Miles reviewed here today the factors set out in the statute that I am required to consider in determining whether or not a defendant should receive the minimum sentence. This was a string of events which defied logic, quite frankly. I agree with Mr. Bryan that it resulted out of a marital— marital problems. But at the same time, I see people through here day after day, after day with marital problems, and I can't recall seeing a situation where one tried to run the other down with a vehicle, knocked other people's cars into the side of another and made phone calls threatening, and all of these types of things. It's beyond me. I have reviewed the past record of this individual, and I'm astounded that it has taken this long to go through with prosecution for the abuse that's been involved in this marriage. Mr. Manzanares is not a person who's demonstrated himself to be entitled to a minimum sentence. The fact[s] of the matter are, people who are considered to be entitled to minimum sentence are generally first time offenders who have had a pretty clean record in the past who approach the court demonstrating a great deal of remorse for the actions that they have taken. And I recognize that finally here today Mr. Manzanares has finally indicated that he has some remorse. Up until this time, including the time when he was interviewed by the court services officer in his presentence report, there was really no remorse for his actions. *There was not even an acknowledgment of responsibility for the actions*. This particular incident, Mr. Manzanares, other than pursuing Mrs. Manzanares, has alleged that it was all an accident, lost control of the car, didn't intend to bump her, but did, didn't intend to cut her off the road over in front of the city hall. Have two independent witnesses who had nothing to do with the thing who observed that last part of the chase. Both testified that it was clear to them that the action that was taken against Mrs. Manzanares to run her up on that curb was an intentional act." (Emphasis added.)

The journal entry of sentencing read in relevant part:

"1. The Court notes that it has considered the criteria for fixing the minimum sentence included in K.S.A. 21-4606, and that the Court finds that the Defendant does have a history of prior criminal activity of a serious nature, *that the Defendant denies culpability for his actions in this matter*,

and that the Defendant has not demonstrated remorse for his actions." (Emphasis added.)

Manzanares argues the trial court used his claim of innocence of the charge as a factor in sentencing him to more than the minimum sentence and that this was a violation of his Fifth Amendment right not to incriminate himself. Manzanares asserts the trial court abused its discretion at sentencing and requests that this court remand the case for resentencing.

There are no Kansas cases on point with the issue of whether a defendant's claim of innocence given in trial testimony can be used as a factor in the trial court's determination of the sentence. A case from a sister state, however, has dealt with the issue.

In *People v. Ward*, 113 Ill. 2d 516, 499 N.E.2d 422 (1986), the court found that a defendant's continued protestation of innocence can be used by a sentencing court as a factor in determining an appropriate sentence. The court found that the sentencing court must consider all matters reflecting upon the defendant's condition and that a defendant's continued claim of innocence, in light of the facts of the case and the evidence before the court, may indicate the defendant's untruthfulness. The trial court should thus be able to consider this untruthfulness as a part of the defendant's current condition and attitude towards society. 113 Ill. 2d at 527-33. The court in *Ward* quoted from the analysis found in *United States v. Grayson*, 438 U.S. 41, 57 L. Ed. 2d 582, 98 S. Ct. 2610 (1978).

In *Grayson*, an escapee from a federal prison testified at trial that his escape was unpremeditated and was the result of a threat from another inmate. Other evidence before the trial court indicated the prisoner had planned the escape. The trial court viewed the defendant's defense as a complete fabrication and considered that fact in sentencing. 438 U.S. at 42-44. The Third Circuit Court of Appeals vacated the sentence and remanded for resentencing without consideration of false testimony.

The *Grayson* Court reversed the Court of Appeals and held that the defendant's readiness to lie under oath may be probative of his prospects for rehabilitation and may be considered by the trial court at sentencing. The Court found the constitutional right to testify on one's own behalf is the right to testify truthfully and that there is no protected right to commit perjury. The sentencing

court has the authority to evaluate a defendant's testimony on the stand and consider that testimony, in addition to all the other knowledge gained about the defendant, in an assessment of the defendant's prospects for rehabilitation and restoration to a useful place in society. 438 U.S. at 52-55.

Under Kansas law, the trial court is required to consider the individual characteristics, circumstances, needs, and potentialities of the person convicted of a crime; where probation or assignment to community corrections would be detrimental to the public safety or the welfare of the offender, the convicted person shall be committed for at least a minimum term as provided by the law. K.S.A. 21-4601. In determining whether a convicted person shall serve only a minimum term, the trial court must consider the history, character, and condition of the defendant. K.S.A. 21-4606. A defendant's truthfulness at trial, and its effect on his restoration to society, is clearly a part of the evaluation of the defendant's individual characteristics and condition required by Kansas statutes.

In the case at bar, the trial court clearly considered Manzanares' claim of innocence to be a factor in sentencing him to more than the minimum term for the charge. Manzanares' claim that he did not intend to strike Marie's car with his van was juxtaposed against testimony by two eyewitnesses that Manzanares appeared to intentionally ram his van into Marie's car.

Edward Krafft began to observe the incident as his vehicle approached Manzanares and Marie about a block from the city hall. He testified that Manzanares made a sharp turn in front of Marie's car and he appeared to intentionally force Marie's car off the road. Michael Black was also approaching from the opposite direction and pulled his vehicle off the road when he observed Manzanares in his traffic lane. He saw Manzanares ram Marie's car into the curb in front of the city hall. He testified that Manzanares came around a corner at 30 to 40 miles an hour, nearly rolling the van, and in less than a block rapidly made up the three to four car lengths by which he trailed Marie's car. When the front bumper of the van was at Marie's door, Manzanares turned the van hard to the right, apparently in an attempt to run Marie's car into the city hall.

In the trial court's statement at sentencing that Manzanares did not accept culpability for his actions, the court indicated it did not believe Manzanares' claim the incident was an accident and that Manzanares had no intention of ramming his van into Marie's car. Under the rationale of *Grayson*, and under the Kansas sentencing statutes, it was not improper for the trial court to consider Manzanares' apparent untruthfulness as a factor in sentencing him to more than the minimum sentence for the charge of aggravated battery.

Even without considering Manzanares' failure to accept culpability for his actions, there were other factors before the court to justify a greater than minimum sentence. On two previous occasions in Colorado, criminal charges against Manzanares were dropped because Marie refused to prosecute. The first, in 1976, was for assault, and the second, in 1982, was for assault and kidnapping. Manzanares also failed to complete a diversion program on a 1987 charge of aggravated assault in Pratt, Kansas.

When sentencing Manzanares to a term of 4 to 10 years on the aggravated battery conviction, the court did not abuse its discretion by considering Manzanares' failure to accept responsibility for his actions.

After sentencing Manzanares in all three cases, the trial court heard his motion for probation. Manzanares took the stand to testify on his own behalf. On cross-examination, the following exchange between the State and Manzanares took place:

"Q   Mr. Manzanares, do you now admit that you rammed Mr. Perez's car?

"A   I—Do I have to say—Can I answer you in this fashion, or do I have to say yes or no?

"Q   That's up to the judge.

  "COURT: It's a yes or no question, you need to answer that way. And then Mr. Miles may let you explain.

"A   Could you repeat the question?

"Q   Did you damage Mr. Perez's car?

"A   Yes.

"Q   Did you do so on purpose?

"A   Yes.

"Q    At the time of the jury trial you denied doing it on purpose, is that correct?
"A    Yes.
"Q    So you lied to the jury in that case?
"A    Just that so many things have been blown out of proportion. I mean, you know, it's been exaggerated, really. There's a lot of it was done, but a lot of it wasn't.
"Q    But you did damage Mr. Perez's car?
"A    Yes, sir.
"Q    And you did lie to the jury about doing it?
"A    To a certain extent.
        "MR. BRYAN: Your honor, I object to this line of questioning. You know what happened at the jury trial, and you can draw your own conclusions.
        "COURT: He's entitled to ask his questions.
"A    To a certain extent, yes.
"Q    I think—(interrupted)
"A    But I think everybody did, really.
"Q    And you've lied to the jury for your own benefit?
"A    Yes, sir, I guess."

The vitality of the Fifth Amendment privilege against self-incrimination extends at least through sentencing because the risk of incrimination ends no earlier than that. The risk of incrimination continues until there is a final judgment in a case and a right to appeal. *State v. Rucas*, 12 Kan. App. 2d 68, 72-73, 734 P.2d 673 (1987). Upon sentencing, or the suspension of sentence, the privilege terminates. *State v. Aldape*, 14 Kan. App. 2d 521, 526, 794 P.2d 672, *rev. denied* 247 Kan. 705 (1990).

When Manzanares admitted he damaged Perez' car, he had already been convicted of that crime. There was thus no danger that his admission could incriminate him on the charge of criminal damage to property. There was also no danger that anything Manzanares said could incriminate him on the other charges of aggravated battery, reckless driving, or making a terroristic threat. He had already been convicted of, or pled guilty to, all of the charges.

Probation from serving a sentence is an act of grace by the sentencing judge and is granted as a privilege, not as a right. The grant of probation is exclusively a function of the trial court. *State v. Walbridge*, 248 Kan. 65, 68, 70, 805 P.2d 15 (1991). The grant of probation is a matter within the sound discretion of the trial court. *State v. Hargis*, 5 Kan. App. 2d 608, 611, 620 P.2d 1181 (1980), *rev. denied* 229 Kan. 671 (1981). If reasonable

persons could differ as to the propriety of the action taken by the trial court, then the trial court did not abuse its discretion. *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

In denying probation, the court stated:

"Well, counsel is aware I have been involved in this series of cases I guess since I've been in this courthouse. I think I have heard about everything there was to hear on it. . . . I cannot find from the facts and from the evidence, from the testimony that's been given, from Mr. Manzanares's past record, from his failure to comply with the terms of the diversion agreement in Pratt in any way, shape or form, anything that indicates to me that Mr. Manzanares is an appropriate candidate for probation. I note that the court services officer also stated a number of reasons why he didn't feel Mr. Manzanares was an appropriate candidate for probation in this matter. I could not, with good conscience, grant probation. Terribly concerned with all the threats that have been made."

The trial court did not abuse its discretion in denying probation to Manzanares. The court was clearly concerned about Manzanares' past record, his failure to complete the diversion agreement in Pratt, and his threats to Marie and Perez. Reasonable persons could agree with the propriety of the trial court's action in denying Manzanares probation.

Affirmed.