(995 P.2d 407)
No. 81,415

STATE OF KANSAS, *Appellee,* v. CEDRICK L. SMART, *Appellant.*

Opinion filed December 30, 1999.

*Craig Durham,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Michelle M. Sehee,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GERNON, P.J., C. FRED LORENTZ, District Judge, assigned, and PAUL E. MILLER, District Judge, assigned.

LORENTZ, J.: Cedrick L. Smart appeals his convictions of robbery, battery, and assault. He claims error in the admission of prior crimes evidence and in the court's granting of an upward durational departure.

On the night of the incident leading to Smart's arrest, Chris Knight was the only employee working at a Quiktrip store in Wichita. Andrew Checkley entered the store to purchase some orange juice and milk. As he approached the cashier to pay for his purchases, Smart entered the store. When Knight began counting Checkley's change back to him, Smart ran into the check-out counter, pushed Knight into the cigarette display, and pinned him down as he began to rifle through the cash register. Checkley heaved the half-gallon of orange juice he had purchased toward Smart, hitting him in the head and causing orange juice to be splashed everywhere. Smart then released Knight, who escaped from behind the counter. Checkley ran from the store and tried to call the police from his car phone. He then attempted to use the pay phone outside the store to call 911.

When Smart had finished taking cash from the register, he ran out of the store and, as he ran past the pay phones, he swung his fist at Checkley. Checkley avoided the blow by stepping back, with the result that Smart hit Webster Parcel, who had been using the other pay phone. Checkley then returned to the store and found Knight on the phone with the police.

Shortly thereafter, Officer Kraft received a dispatch reporting the robbery and describing the suspect. He patrolled the area northwest of the Quiktrip and noticed a person fitting the description of the suspect walking down a dark alley. As Kraft accelerated to catch up, the suspect began to jog and then to sprint as the car kept pace. Kraft pulled alongside and yelled several times for the suspect to stop, all to no avail. Kraft then pulled ahead, jumped out of his car, and tackled the suspect, who turned out to be Smart. As Kraft took Smart into custody, he noticed and retrieved a wad of $50 in cash from Smart's person. Kraft then returned to the Quiktrip with Smart, who was identified by Knight, Checkley, and Parcel as the man who had robbed and run from the store.

At trial, the State introduced a videotape of the robbery taken from the store's surveillance camera. Extensive expert testimony was also introduced tying the stains found on Smart's clothing to the residue taken from the broken orange juice jug thrown by Checkley.

Smart testified he had been in Wichita for about 3 years to attend Friends University. He also stated he was engaged to be married to a woman who was pregnant with his twins and who had two other children he treated as his own.

As to the night in question, Smart testified he had gone to a party where he met an acquaintance, Tyrone, who wished to borrow his car. He further stated that when Tyrone did not immediately return, he went looking for his car. He walked through the Cowboy Club parking lot, questioned the doorman at the club, and went into the club but was unsuccessful in locating either his car or Tyrone. He then began walking back to the party and was subsequently chased and arrested in the manner described by Kraft.

Smart also claimed he frequently purchases orange juice at the local Quiktrip and rarely changes his clothes when they become soiled. He claimed his fiancee's daughter might have spilled orange juice on the shirt he was wearing at the time of his arrest. Finally, Smart testified he had never been charged with a robbery or "anything like this" before.

On cross-examination, the State offered evidence of Smart's three prior theft convictions. This evidence of prior crimes was admitted over Smart's objection.

At sentencing following Smart's conviction, the trial court granted the State's request for an upward durational departure.

Smart first claims the trial court erred in admitting his prior theft convictions. The trial court determined that credibility became an issue when Smart testified about his reasons for coming to Wichita and the origin of the orange juice stains on his T-shirt in an attempt to bolster his credibility. Smart contends he was simply eliciting background information, which he was entitled to do.

In determining whether the trial court erred in admitting evidence of prior crimes against the defendant in a criminal trial, the appellate court reviews the record for an abuse of the trial court's discretion. *State v. Peckham,* 255 Kan. 310, 330, 875 P.2d 257 (1994).

Generally, evidence introduced by the State to attack the defendant's credibility is not admissible unless the defendant first introduced evidence solely to support his or her credibility. K.S.A. 60-421. The State may not seek to attack the defendant's credibility merely because he or she testifies at trial. *State v. Johnson,* 21 Kan. App. 2d 576, 578, 907 P.2d 144, *rev. denied* 258 Kan. 861 (1995).

A criminal defendant is entitled to relate to the jury background or biographical information, including length of residence in the community, length of marriage, size of family, occupation, date of birth, education, place of employment, and service in the armed forces and receipt of an honorable discharge, that would enable the jury to properly place the defendant into the events brought out at trial. However, if the defendant moves beyond mere background material to testify to specific prior incidents or to create the impression of a blemish-free life, the prosecution may rebut the same with evidence of prior crimes. *State v. Bowers,* 218 Kan. 736, 738, 545 P.2d 303 (1976).

In this case, Smart testified he resided with his fiancee, who was due to give birth to his twins in about a month. He then testified about attending a party on January 26, 1999, with some acquaintances. He claimed he did not know them well since he had been in Wichita for only about 3 years. Smart added that he had come to Wichita to attend Friends University.

Later, when explaining the origin of the stains on his T-shirt, Smart claimed he often purchased things at Quiktrip for his step-daughters. He testified he called them "my kids." He testified he tries to spend as much time with them as possible and that he eats breakfast with them every morning.

Finally, when asked by defense counsel whether he had ever been charged with any robberies or "anything like this" in the past, Smart responded negatively. When asked why his fiancee was not in court, Smart explained she was not present because her pregnancy was making her feel ill.

Although much of the contested testimony arose from the questions asked on direct examination, it also was not entirely relevant to a determination of the defendant's guilt or innocence of the charged crimes, except to support his credibility. Whether designed or accidental, the challenged testimony supported the defendant's credibility by portraying him as a loving family man, a student, and a nonaggressive personality.

As the trial court conceded, the determination whether the defendant attempted to bolster his credibility is a close call. Since it is such a close call, a reasonable person could decide either way. Therefore, the trial court did not abuse its discretion, and this court must affirm. See *State v. Haddock*, 257 Kan. 964, 978, 897 P.2d 152 (1995).

Even if this court were to find an abuse of discretion in admitting the prior crimes evidence, the error is harmless. The State produced a videotape of the robbery revealing a robber who looked very much like Smart. That videotape was supported by three substantially identical accounts by eyewitnesses. The State also produced expert testimony linking the stains on Smart's shirt with the broken bottle of orange juice thrown at the robber.

Reversal of a conviction based upon the erroneous admission of prior crimes evidence is only proper when the admission prejudices the defendant's right to substantial justice. *State v. Mullins*, 267 Kan. 84, 97, 977 P.2d 931 (1999). The evidence against Smart, even disregarding the prior crimes evidence, clearly supports the jury's finding of guilt. Accordingly, Smart was not deprived of substantial justice.

Smart next argues the trial court erred in granting the State's motion for an upward departure based on his perjury. He claims that since the crime was not heinous, involved only $30, and did not involve a weapon, he should have been granted a downward departure.

The review of a sentencing departure is two-fold. K.S.A. 21-4721(d) requires the court to first review the trial court's departure findings to determine if the evidence supports those findings. Then the court must review those findings to see if they constitute substantial and compelling reasons to depart.

Whether the trial court relied upon a substantial and compelling basis for departure is a question of law over which this court has unlimited review. See *State v. Gideon*, 257 Kan. 591, 623, 894 P.2d 850 (1995). A review of state and federal case law reveals that perjury constitutes a substantial and compelling basis for departure, as it reflects the prospects for the defendant's rehabilitation. See *United States v. Grayson*, 438 U.S. 41, 50-51, 57 L. Ed. 2d 582, 98 S. Ct. 2610 (1978); *State v. Whitaker*, 260 Kan. 85, 89-90, 917 P.2d 859 (1996).

Turning to the first prong of the analysis, a trial court may only enhance a sentence based upon a departure factor supported by substantial evidence. In order to reverse the trial court's findings, the appellate court must be convinced the findings are clearly erroneous or unsupported by the evidence. *Gideon*, 257 Kan. at 622-23.

In *State v. Manzanares*, 19 Kan. App. 2d 214, 866 P.2d 1083 (1994), *disapproved on other grounds by State v. Guebara*, 24 Kan. App. 2d 260, 944 P.2d 164 (1997), this court reviewed an upward sentencing departure arising from the trial court's determination that the defendant had committed perjury. The defendant had contradicted testimony of two eyewitnesses by contending he had not struck the victim's car intentionally. Affirming the upward departure, this court considered veracity, or lack thereof, an appropriate sentencing factor. 19 Kan. App. 2d at 225-26.

In the present case, the trial court determined the evidence overwhelmingly pointed to Smart's guilt in robbing the Quiktrip. Furthermore, he proceeded to take the stand and contradict in-

disputable evidence by fabricating alternate stories for each aspect of the crime. Smart had no witnesses to corroborate his alibi of being at the Cowboy Club. Moreover, the orange juice stains were purportedly the result of the carelessness of Smart's fiancee's child in using a broken cup which leaked on Smart's shirt, yet the leaky cup was never introduced for the jury, and the defendant's fiancee did not testify about the child's cup or corroborate Smart's story concerning the purchase of orange juice at Quiktrip.

From the record, it is apparent the trial court was well supported in its conclusion that Smart had perjured himself. Accordingly, under Kansas law, there was no error in departing from the presumptive sentence under the guidelines. However, although no Kansas court has yet addressed the issue, *United States v. Dunnigan*, 507 U.S. 87, 95-96, 122 L. Ed. 2d 445, 113 S. Ct. 1111 (1993), suggests that due process demands that the district court, through its findings, establish that all the elements of perjury are satisfied before executing an upward departure.

"The concern that courts will enhance sentences as a matter of course whenever the accused takes the stand and is found guilty is dispelled by our earlier explanation that if an accused challenges a sentence increase based on perjured testimony, the trial court must make findings to support all the elements of a perjury violation in the specific case." 507 U.S. at 96-97.

The Tenth Circuit has also adopted the *Dunnigan* standard for a perjury departure. See *U.S. v. Smith*, 81 F.3d 915, 918 (10th Cir. 1996) ("A finding of perjury in support of a sentence enhancement for obstruction of justice must contain two components. First, the finding must encompass all of the factual predicates of perjury. [Citation omitted.] Second, the finding must specifically identify the perjured testimony. [Citation omitted.]").

Although we find no Kansas court has specifically adopted the federal standard, we hold that due process demands, at a minimum, a finding that all the elements of perjury are satisfied before perjury is used as a basis for an upward sentencing departure. To hold otherwise would put a defendant in a position of being coerced into not testifying.

A criminal defendant normally takes a risk by testifying in his or her own defense, being subject to cross-examination and impeachment. If the trial court is permitted to enhance the sentence without a clear determination of perjury, a defendant faces the possibility that a trial judge will increase the sentence, after a finding of guilty, simply because the defendant was not credible, regardless of whether he or she told the truth on the witness stand.

The convictions are affirmed, the sentences are vacated, and the case is remanded for findings on the elements of perjury to justify an upward departure.