THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN W. STANBRIDGE, Defendant-Appellant.

Fourth District   No. 4—02—0183

Opinion filed May 4, 2004.

McCULLOUGH, J., dissenting.

Daniel D. Yuhas and Catherine K. Hart, both of State Appellate Defender's Office, of Springfield, for appellant.

Barney S. Bier, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

An Adams County jury found defendant, Kevin W. Stanbridge, guilty of aggravated criminal sexual abuse (720 ILCS 5/12—16(d) (West 2002)), and the circuit court sentenced him to seven years in prison. Defendant appeals, arguing that the trial court erred in finding that his attorney's opening statement opened the door to the State's presentation of other-crimes evidence. We reverse and remand for a new trial.

The information charging defendant alleged that he committed an act of sexual penetration with J.R.E., a minor, by placing his mouth on J.R.E.'s penis on or about November 27, 1999. J.R.E. was 14 years old.

Defendant, a 35-year-old truck driver, was friends with Robert Eddy, J.R.E.'s father. In November 1997, when defendant was living in Quincy with his wife and children, Eddy and J.R.E. came to stay with him. They stayed for almost a year. Eddy and J.R.E. stayed with defendant and his family a second time, from January to June 1999.

Defendant and Eddy maintained contact thereafter, periodically meeting for beer. On Friday, November 26, 1999, defendant called Eddy to ask if he and J.R.E. would like to come to defendant's house for a barbecue. Defendant's wife had by now divorced him, but their three children were staying with defendant on this particular weekend. He and Eddy left the children with J.R.E. while they went to a bar. Defendant and Eddy each consumed several beers before returning to defendant's home at around 9 p.m., accompanied by a friend named Jeff Warner.

At defendant's home, the three adults and J.R.E. began watching a movie in the living room. Eddy went to sleep in another room, leav-

ing defendant, Warner, and J.R.E. When J.R.E. began to fall asleep on the couch, defendant told him to go to defendant's bedroom so he could sleep there. Defendant then dragged J.R.E. by the ankles into defendant's bedroom and told him to take his clothes off. After J.R.E. stripped down to his underwear, he got into defendant's bed, and defendant returned to the living room to continue watching the movie.

J.R.E. testified that he went to sleep but during the night awoke to the feeling of defendant rubbing his crotch. J.R.E. told him to stop and elbowed him in the head. Defendant stopped, and J.R.E. dozed off. Later he was again awakened, this time by defendant performing oral sex on him. Defendant denies any sexual contact between him and J.R.E.

Prior to trial, defendant filed a motion *in limine* to exclude evidence of (1) an October 24, 1989, conviction for criminal sexual abuse (P.F.) and (2) an uncharged sexual offense from 1981 (A.B.). At the hearing on this motion, the State also raised a third incident, another uncharged offense from 1987. The State wished to use these prior incidents to prove *modus operandi* and absence of mistake. The trial court found that there was a significant risk of prejudice in allowing the State to use any of this evidence at trial and granted the motion as to all three incidents.

On the morning of the first day of trial, the State filed its own motion *in limine*. The State sought to bar defendant from using any reference to his heterosexuality as part of his defense. Defendant had commented to a police investigator that he was not a homosexual and did not like little boys. The assistant State's Attorney (ASA) asserted that defendant should not be allowed to "argue that statement in support of his assertion that he is heterosexual."

The trial court denied the State's motion but in doing so warned defendant against opening the door to this topic. The court stated that "if there are references, solicitations, [or] evidence presented, then the State would be permitted, contrary to my earlier ruling, to bring in the testimony of the other conduct to rebut that[,] and it would be completely appropriate." The court warned defendant's attorney that he would be on "a very slippery slope in this regard."

In his opening statement, defense counsel began with some background information, stating that "[m]y client is at this time—at the time of the incident in November of 1999 *** he was a father of [three]. He had an 11-month-old daughter, 2 sons, 4 and 6 years old. He's a veteran." A little later, counsel discussed the relationship between defendant's and J.R.E.'s families, relating that "in November of 1997[,] [J.R.E.] and Rob Eddy lived with [defendant]. Moved out sometime in August of 1998, lived there for, oh, almost a year period.

The facts will indicate that all during this period of time there is [*sic*] *no similar allegations*. They also move back in some[ ]time in January of '99. They moved out sometime May or June of '99." (Emphasis added.)

As soon as defense counsel finished his opening statement, the State moved to reconsider the rulings on both of the motions *in limine*. Although his argument is not clear, the ASA apparently thought that when defense counsel stated that defendant was a father and a veteran, he intended to raise an inference of heterosexuality. The trial court asked the ASA to comment on the statement regarding "similar allegations," and the ASA responded by saying that the defense had "burst through that door" such that the motions *in limine* should be reversed.

The trial court was troubled by defendant being described as a father and a veteran but more worried about the remark that there were no similar allegations during the time defendant and J.R.E. lived in the same household. The court declared the "door to have been opened" and that the State should be allowed to present evidence of defendant's 1989 conviction and the uncharged incident from 1987.

In its case in chief, the State called as witnesses the two young men involved in these incidents. P.F. testified that in August 1989, when he was 14, he was playing pool in a bar while waiting for his mother when defendant asked him if he wanted some beer. The two got into defendant's truck, went to buy some beer, and then drove to an isolated area near a stone bridge in South Park. There, defendant laid his head in P.F.'s lap and then started rubbing P.F.'s crotch until P.F. escaped out of the truck. Defendant was convicted of criminal sexual abuse, a Class A misdemeanor.

The testimony of A.B., defendant's cousin, was in some ways similar. In the autumn of 1987, when he was 12 years old, A.B. was supposed to go hunting in Liberty with defendant. Defendant picked him up in his truck but instead of taking him to Liberty, defendant bought beer and drove to the stone bridge in South Park. Defendant stretched out across the truck's seat and attempted to lay his head in A.B.'s lap, but A.B. moved to get out of the way. A.B.'s testimony was very emotional. A.B. did not report the incident until 2001, and defendant was never charged.

The ASA began his closing argument by citing a dictionary definition of the word "predator" and stating that "[w]hat we have here now today is a [']predator,['] a predator of teenage boys to put it bluntly." He followed this with an extensive comparison of the charged crime with the two previous incidents before moving on to discuss the other evidence.

Defendant was convicted, and his motion for a new trial was denied. The State correctly asserts that the motion for new trial was filed late and argues that defendant has therefore forfeited the issue raised. Forfeiture, however, is a two-way street—the State chose to argue the untimely motion on the merits and thus forfeited the issue of untimeliness. See *People v. Raibley*, 338 Ill. App. 3d 692, 698, 788 N.E.2d 1221, 1227-28 (2003).

■ On appeal, defendant contends that the trial court erred in finding that defense counsel's opening statement had "opened the door" to the admission of evidence about the two prior incidents. Although defendant presents his argument as one issue, this case really presents two separate questions. The first is whether the evidence of a prior crime and a prior uncharged incident was admissible on its own; the second is whether the court properly admitted it in response to defense counsel's opening argument. We review the court's decision for whether it was an abuse of discretion. *People v. Manning*, 182 Ill. 2d 193, 211, 695 N.E.2d 423, 431 (1998).

The State sought to admit the evidence to show *modus operandi* and absence of mistake, but neither of these uses for the evidence applies here. Although the trial court initially excluded the evidence because of its possible prejudicial effect, it apparently accepted the State's two rationales for admission. We should therefore clarify why both are incorrect.

Evidence of other crimes is not usually admitted to show propensity, *i.e.*, to show that the defendant is the type of person who would have committed the crime charged. *People v. Donoho*, 204 Ill. 2d 159, 170, 788 N.E.2d 707, 714 (2003). This type of evidence is considered dangerous because a jury might convict the defendant for being a bad person rather than for having actually committed the crime he is currently charged with. *Donoho*, 204 Ill. 2d at 170, 788 N.E.2d at 714. Nevertheless, courts allow evidence of prior crimes to prove a number of things other than propensity, such as *modus operandi* and absence of mistake, provided the prejudicial effect of the evidence does not substantially outweigh its probative value. *Donoho*, 204 Ill. 2d at 170, 788 N.E.2d at 714-15.

Evidence of *modus operandi*, or mode of operation, is useful when the identity of the perpetrator is in dispute. *People v. Biggers*, 273 Ill. App. 3d 116, 123, 652 N.E.2d 474, 479 (1995). If two crimes are committed in such a distinctive manner that they are recognizable as the work of a single individual, and if we know that the defendant committed one of the crimes, then it makes sense to use that evidence to prove that he also committed the other. See *Biggers*, 273 Ill. App. 3d at 123, 652 N.E.2d at 478. This rationale makes sense when the only

proof that the defendant committed the second crime is that it was very similar to another crime that we know he committed. Our case is very different. Here, defendant and J.R.E. were in defendant's bedroom alone together. The only disputed issue is whether defendant committed an act of sexual penetration on J.R.E. in that room. The identity of the perpetrator is not in issue; the issue is whether the crime occurred at all. The relevance of defendant's prior bad acts in this case is to show that he probably committed another crime here, *i.e.*, propensity.

The State also argued that the evidence showed what is called "absence of mistake." Proving the absence of a mistake is necessary where the defendant's physical actions are undisputed but his state of mind is in issue. As an example, where the defendant in a murder case claims he shot his wife by accident, evidence that he had previously abused her is relevant to show that he shot her intentionally. *People v. Illgen*, 145 Ill. 2d 353, 366, 583 N.E.2d 515, 520 (1991). Perhaps a better example is a sexual-abuse case where the defendant admits physical contact with the victim but claims that it was an accident. In such a case, evidence that the defendant had abused others would be relevant to show that this incident was not an innocent mistake. But again, our case is different. Defendant's conduct inside the bedroom is what is in issue. He does not admit the physical acts alleged and try to put an innocent "spin" on them. Rather, he denies the acts themselves. The only relevance to the State's evidence is therefore that defendant was the type of person who is likely to have performed those acts that he denies.

In a new wrinkle to the well-established principles regarding propensity evidence, the Code of Criminal Procedure of 1963 now allows prior offenses to be used even as propensity evidence in prosecutions of certain sex crimes. 725 ILCS 5/115—7.3 (West 2002); *Donoho*, 204 Ill. 2d at 176, 788 N.E.2d at 718. Despite holding that the statute allows the use of prior-offense evidence to prove propensity, the Supreme Court of Illinois has "urg[ed] trial judges to be cautious in considering the admissibility of other-crimes evidence to show propensity by engaging in a meaningful assessment of the probative value versus the prejudicial impact of the evidence." *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 724.

The State did not argue at trial that the prior incidents should be admitted to prove defendant's propensity to commit the charged crime. Defendant's prior conviction was potentially admissible under section 115—7.3 (725 ILCS 5/115—7.3 (West 2002)), but only if the requirements of the statute, including a weighing of prejudice and probative value, were met (*Donoho*, 204 Ill. 2d at 176, 788 N.E.2d at 718). In

initially considering the evidence, the trial court did find that it presented a high probability of prejudice if admitted, a conclusion with which we agree. The prior conviction was from 10 years prior to defendant's trial, which is relevant to the statutory factor of proximity in time. 725 ILCS 5/115—7.3(c)(1) (West 2002). This interval weighs against admissibility. The statute also requires a court to consider the similarity between the prior offense and that with which a defendant stands accused. 725 ILCS 5/115—7.3(c)(2) (West 2002). In light of the supreme court's admonition that courts should remain cautious about admitting other-crimes evidence to show propensity, we conclude that the evidence was inadmissible. *Donoho*, 204 Ill. 2d at 186, 788 N.E.2d at 724.

■ Although the evidence was inadmissible in its own right, the trial court nevertheless admitted it in response to defendant's opening statement. Under the doctrine of "curative admissibility," if a party "opens the door" by raising a particular issue, the trial court may allow the other party to present otherwise inadmissible evidence if doing so is necessary to prevent undue prejudice. *Manning*, 182 Ill. 2d at 216, 695 N.E.2d at 433. But curative admissibility "is merely protective and goes only as far as is necessary to shield a party from adverse inferences." *Manning*, 182 Ill. 2d at 216-17, 695 N.E.2d at 434.

The State first argued at trial that defense counsel's description of defendant as a veteran and a father of three had opened the door to the disputed evidence. We disagree. The State claimed that these comments necessarily implied that defendant was heterosexual and that therefore the State should be allowed to prove his prior sexual misconduct with boys. But as the State points out in its brief before this court (citing *State v. Smart*, 26 Kan. App. 2d 808, 811, 995 P.2d 407, 411 (1999)), a defendant may tell the jury background information such as family size or prior military service so long as he does not try to create an impression of a blemish-free life. Contrary to the State's assertions, defense counsel did not "cross the line" to create an impression of a blemish-free life. In addition, given that the State's own opening statement had already alluded several times to defendant's children, the fact that defense counsel described defendant as a father is unremarkable. Nor should counsel's comment that defendant was a veteran have been used to allow the State to introduce inadmissible evidence.

Defendant makes the additional argument that even if his opening statement had implied that he was heterosexual, the State should not have been allowed to try to counter that implication because heterosexuals are just as likely as homosexuals to abuse children sexually. See M. Becker, *The Abuse Excuse and Patriarchal Narratives*, 92

N.W. U. L. Rev. 1459, 1466-67 (1998). We express no opinion on this issue but note that trial courts should take into account the high likelihood of prejudice in this type of case when the State is allowed to emphasize defendant's sexual preference.

The State's second argument for curative admissibility was that the evidence would respond to defense counsel's statement that during the first of the two periods when defendant hosted J.R.E. and his father there were "no similar allegations." The State asserts that this implied that defendant had never been faced with similar allegations and that it was proper to allow that implication to be rebutted. The State's contention is especially unpersuasive in light of the fact that the ASA at trial did not even notice the comment until the trial court pointed it out to him. Read in context, defense counsel's comment was not an attempt to portray defendant as having an unblemished past but was rather part of setting out the relationship between defendant's and J.R.E.'s families.

Given the highly prejudicial nature of the State's evidence, the trial court erred in admitting it as part of the State's case in chief, not as a response to the evidence presented by defendant. Courts must use curative admissibility cautiously and should employ it to allow parties to respond only to unduly prejudicial inferences raised by the other side. See *Manning*, 182 Ill. 2d at 216-17, 695 N.E.2d at 433-34. Although an opening statement can clearly open the door to otherwise inadmissible evidence (see *People v. Whiters*, 146 Ill. 2d 437, 442-43, 588 N.E.2d 1172, 1174-75 (1992)), courts should be particularly hesitant to allow the State to use highly prejudicial evidence in its case in chief. See *Terry v. State*, 332 Md. 329, 338-39, 631 A.2d 424, 428-29 (1993) (allowing evidence of prior crimes "to counter a rather innocuous albeit improper suggestion made by defense counsel in an opening statement is tantamount to killing an ant with a pile driver"). Even assuming defense counsel's statement was improper, the State's and the court's response was excessive. The court could easily have waited until the State's rebuttal evidence to decide whether the opening statement was an isolated incident or was reinforced by defendant's evidence.

Although there was some circumstantial evidence, the crux of this case is who should be believed about what happened in defendant's bedroom. Where the determination of a defendant's guilt or innocence depends on the credibility of the defendant and the accuser, error is particularly likely to be prejudicial. *People v. Lawler*, 142 Ill. 2d 548, 561-62, 568 N.E.2d 895, 901 (1991). We find that to be the case here.

In light of the foregoing, we reverse the jury verdict and remand for a new trial.

Reversed and remanded.

APPLETON, J., concurs.

JUSTICE McCULLOUGH, dissenting:

I respectfully disagree with the majority's determination of error by the trial court in admitting evidence presented by the State.

The trial court was correct in finding the defense counsel's opening statement was clear and did permit the evidence to be used as evidence of *modus operandi*. The opening statement of defendant as highlighted by the State in its brief states:

> "What he means by facts, there's other things in dispute. My client is at this time—at the time of the incident in November of 1999, here we are almost 2 years later, but at the time he was a father of 3. He had an 11-month-old daughter, 2 sons, 4 and 6 years old. He's a veteran. He is working at the time as an over-the-road truck driver and supporting his children at the time. *** The facts will indicate that all during this period of time there is [*sic*] no similar allegations."

The court referred to the statement of the father and three children and linking his experience as a veteran but, more important, defendant's reference that nothing happened between 1997 and 1999 and that *there were no similar occurrences*. The court did continue its ruling not permitting the State to introduce the evidence of the 1981 occurrence.

The standard of review is whether the ruling was an abuse of discretion. The majority states that *modus operandi* is used in proving identity of the perpetrator. I conclude *Biggers*, *Illgen*, and *Donoho* support the trial court's ruling.

The trial court made clear the basis for its ruling. I do not believe the court committed error and would affirm the court's order based upon the jury's verdict.