(734 P.2d 673)
No. 59,299

STATE OF KANSAS, *Appellee,* v. BRETT L. RUCAS, *Appellant.*

—

Opinion filed April 2, 1987.

*Jessica Kunen,* deputy appellate defender, and *Benjamin C. Wood,* chief appellate defender, for appellant.

*Debra Barnett,* assistant district attorney, *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before ABBOTT, C.J., REES and MEYER, JJ.

REES, J.: Brett L. Rucas appeals from a summary adjudication of direct contempt and the sentence imposed. K.S.A. 20-1203. The underlying facts are relatively straightforward. Two issues are raised. One requires particular attention; its resolution obviates any need to address the other.

By a single count information, it was charged that Rucas and Jeffrey Rhea committed an aggravated robbery (K.S.A. 21-3427) on December 10, 1985.

On the morning of March 3, 1986, Rucas pleaded guilty to the charge; his sentencing was set for April 17, 1986, and a presentence investigation report was ordered.

Also on March 3, 1986, Rhea went to trial. At the end of the day, it was brought to the trial judge's attention that the State intended to call Rucas to testify in its case in chief against Rhea and that upon assertion of entitlement to the Fifth Amendment privilege against self-incrimination Rucas wished to decline to testify in response to questioning by the State. Rucas' counsel requested that the trial judge explain to his client the court's contempt powers. In the presence of Rucas, Rhea, their counsel, and the prosecuting assistant district attorney, the trial judge responded to the request and, insofar as is now pertinent, had this to say:

"[W]hen a person has entered a plea of guilty to a charge, he gives up *any* Fifth Amendment rights he has as far as testimony as to that particular charge. . . .

"[Rucas] has *no* Fifth Amendment rights since he's already pled guilty to this charge . . . ." (Emphasis added.)

Immediately upon the reconvening of court the following morning, Rucas was called to testify as a witness on behalf of the State and this transpired:

"Q. [PROSECUTOR]: I ask you to state your name.
"A. Brett Rucas.
"Q. Mr. Rucas, I want to direct your attention to the date of December 10, 1985, and ask you whether or not you're willing to testify regarding your actions and the actions of Jeffrey Rhea on that date?
"A. No, I'm not.
. . . .
"Q. [I]f the judge were to order you that you cannot refuse to testify, are you still refusing to testify?
"A. Yes, I am.
"[PROSECUTOR]: You Honor . . . we . . . ask that the Court find Mr. Rucas guilty of contempt of court based on his refusal to testify . . . .
". . . [O]nce you enter a plea of guilty to a crime even though you have not been sentenced, you no longer have a Fifth Amendment right to refuse to testify. And on that basis I would ask that you find him in contempt of court . . . .
"[RUCAS' COUNSEL]: If I may address the court?
"THE COURT: Yes.
"[RUCAS' COUNSEL]: . . . [T]here is legal authority that problems arise when attempts are made to compel testimony of individuals convicted but not sentenced . . . . Generally, those courts that have expressly considered the matter have held that the privilege protects one against use of compelled testimony in setting sentence and in use on a new trial, and therefore an individual may not be compelled to respond to questions until after sentencing and the time for appeal as of right has expired.
. . . .
"State v. Tyson, 43 New Jersey 411, a 1964 case . . . says the privilege can be invoked before sentence is imposed.
. . . .
". . . [B]asically [Rucas] feels that he hasn't been sentenced yet, that this information could be used in sentencing. It would be compelled testimony. He . . . feels that . . . there is a possibility sometime in the future there may be a motion to withdraw plea or something to that effect, and he feels that he still has the Fifth Amendment privilege not to be compelled to incriminate himself, and he wishes to assert that.
. . . .

"THE COURT: . . . Fifth Amendment rights go down the rapids when you enter a plea of guilty.

". . . [T]he court is going to order that you have *no* Fifth Amendment rights not to testify in this case . . . .

. . . .

"THE COURT: Do you want to persist on your refusal, Mr. Rucas?

"MR. RUCAS: Yes, I do.

"THE COURT: All right. The court is going to find you in contempt of court. I'm going to sentence you to one year in the county jail." (Emphasis added.)

As directed by K.S.A. 20-1203, judgment was entered of record by the filing of a journal entry memorializing the in-court proceedings in the following language:

"On this 4th day of March, 1986, this matter comes on for hearing during the jury trial of Jeffrey R. Rhea. . . .

"The State of Kansas calls Brett L. Rucas to testify. . . . Brett L. Rucas, refuses to testify. The Court makes the following findings:

"1. On March 3, 1986, Brett L. Rucas entered a plea of guilty to an Aggravated Robbery committed on December 10, 1985, at the Revco Store in Wichita, Kansas.

"2. *The testimony requested from [Rucas] by the State pertains to the Aggravated Robbery to which [Rucas] has plead guilty.*

"3. [Rucas] has *no* Fifth Amendment or other right to refuse to testify in this case.

"The Court then orders [Rucas] to testify or be found in direct contempt of Court pursuant to K.S.A. 20-1203. [Rucas] refuses to testify.

"The Court after listening to arguments and statements of counsel including [Rucas'] argument that he has a Fifth Amendment Right to not testify, finds . . . Brett L. Rucas, in direct contempt of Court.

"The Court sentences . . . Brett L. Rucas, to serve one (1) year in the Sedgwick County Jail . . . ." (Emphasis added.)

As his first issue on appeal, Rucas argues that the Fifth Amendment privilege against compelled testimonial self-incrimination was available for his exercise and because of that the adjudication for direct contempt was erroneous. In addressing this issue, some initial observations merit mention.

The Fifth Amendment privilege protects an individual not only from incrimination compelled in prosecutions against himself, but also from incrimination compelled in any other proceeding. The privilege is not dependent upon the nature of the proceeding; it protects a mere witness as fully as it does one who is a party defendant. *Lefkowitz v. Turley,* 414 U.S. 70, 77, 38 L. Ed. 2d 274, 94 S. Ct. 316 (1973); *McCarthy v. Arndstein,* 266 U.S.

34, 40, 69 L. Ed. 158, 45 S. Ct. 16 (1924). In the case before us, the privilege is claimed by Rucas as a *witness* (see K.S.A. 60-425), not as an accused (see K.S.A. 60-423[a]). This distinction is recognized in *State v. Nott*, 234 Kan. 34, 39-40, 669 P.2d 660 (1983). Further, because the issue at hand was raised in the trial court and is presented to us by the witness claimant of the privilege, not by the State or Rhea, the accused, *State v. Anderson*, 240 Kan. 695, 732 P.2d 732 (1987), is distinguishable and not controlling.

At the foundation of Rucas' direct contempt adjudication is the premise that he had *no* privilege against incrimination. Thus, first and foremost is the question whether Rucas had *any* incrimination privilege. We must reverse if he had *some* incrimination privilege for the reason that no trial court determination has been made that if he had the privilege its reach or scope was exceeded or its assertion was not justified. See *Hoffman v. United States*, 341 U.S. 479, 486-87, 95 L. Ed. 1118, 71 S. Ct. 814 (1951); *State v. McQueen & Hardyway*, 224 Kan. 420, 429, 582 P.2d 251 (1978). The question in this case is one of existence of the privilege, not the reach or scope of the privilege or whether its assertion was justified. The question confronting us is whether a person who has pleaded guilty to a crime but who has not yet been sentenced is entitled to exercise the Fifth Amendment privilege against compelled testimonial self-incrimination with respect to the crime to which he has pleaded guilty. Although the general inquiry is when does the privilege cease to be operational, the specific inquiry raised by this case is whether it ceases to operate upon entry of a guilty plea or whether it retains vitality at least until sentencing.

Reference to the subject at hand can be found in reported decisions from various other jurisdictions. The positions taken are not uniform. In the main, they recite barely more than fleeting reference to the subject. Few recite in-depth analysis produced by reflective deliberation. Some, if not many, seem to simply feed upon one another.

At what point in time on the continuum of judicial process is incrimination sufficiently complete that the risk of incrimination ends? At least five time zones may be identified: (1) prior to verdict; (2) through verdict but not sentencing; (3) through

sentencing; (4) through direct appeal; (5) through the period of possible collateral review. *Ellison v. State,* 65 Md. App. 321, 329-31, 500 A.2d 650 (1985), *cert. granted* 305 Md. 600 (1986). It appears that the "weight of authority" supports our conclusion that availability of the privilege continues at least through sentencing for the reason that the risk of incrimination ends no earlier than that. See, *e.g., Mills v. United States,* 281 F.2d 736, 741 (4th Cir. 1960); *People v. Villa,* 671 P.2d 971, 973 (Colo. App. 1983); *Ellison v. State,* 65 Md. App. 321; *People v. Herbert Smith,* 34 Mich. App. 205, 210-11, 191 N.W.2d 392 (1971), *aff'd* 396 Mich. 362, 240 N.W.2d 245 (1976); *State v. Tyson,* 43 N.J. 411, 416, 204 A.2d 864 (1964), *cert. denied* 380 U.S. 987 (1965); *State v. Corbin,* 48 N.C. App. 194, 196-97, 268 S.E.2d 260, *rev. denied* 301 N.C. 97 (1980); *State v. Nelson,* 246 Or. 321, 323, 424 P.2d 223, *cert. denied* 389 U.S. 964 (1967); *Com. v. Bellacchio,* 296 Pa. Super. 468, 474, 442 A.2d 1147 (1982); *State v. McConnohie,* 121 Wis. 2d 57, 65, 358 N.W.2d 256 (1984). Case authority holding the privilege extends beyond sentencing need not now be relied upon.

The State argues that the privilege ceases to exist upon conviction, which in this case occurred when Rucas' guilty plea was accepted, a time prior to his assertion of the privilege at Rhea's trial. We disagree. We are persuaded by the reasoning appearing in *Ellison v. State,* 65 Md. App. at 324-31, 334-45. The reasoning and analysis reported in *Ellison* is the most thorough and cogent we have found in the relevant authorities called to our attention or found through our research. We refer the reader to what is said there; to summarize or paraphrase that exposition would do it a disservice. Nonetheless, from that opinion, we repeat this:

"Until the verdict is consummated by the sentence, there is no final judgment. We are still within the *nisi prius* stage. There yet is nothing on which an appeal can be taken. It strains logic to deem the risk of incrimination to be at an end before there has been a final judgment in the case." *Ellison v. State,* 65 Md. App. at 342-43.

In Kansas there is no "final judgment in the case" from which an appeal can be taken until there has been both conviction and sentencing, or suspension of sentence. *State v. McDaniels,* 237 Kan. 767, 770, 703 P.2d 789 (1985); *City of Kansas City v. Sherman,* 9 Kan. App. 2d 757, 758-59, 687 P.2d 1383 (1984); *City*

*of Topeka v. Martin*, 3 Kan. App. 2d 105, 590 P.2d 106 (1979). The sentencing judge may consider the circumstances of the offense and any mitigating or aggravating factors, the attitude of the victim and the victim's family, and the defendant's criminal record, social history, and mental and physical condition. See K.S.A. 1986 Supp. 21-4603(1) and K.S.A. 21-4606(1). Further, the court may consider "any other facts or circumstances that may aid the court in sentencing . . . [including] the financial, social, psychological, physical or other harm or loss suffered by victims of the offense and the restitution needs of such victims." K.S.A. 1986 Supp. 21-4604(2)(d).

We conclude that vitality of the Fifth Amendment privilege against self-incrimination extends at least through sentencing, that here the trial court erred in holding to the contrary, and that this case must be reversed.

As his second issue on appeal, Rucas challenges the trial court's order that he serve one year in jail. The State agrees there was error. We need not address the question. Our disposition of the Fifth Amendment privilege issue and our order that the direct contempt adjudication be reversed makes that unnecessary.

Reversed.