(794 P.2d 672)

No. 64,166

STATE OF KANSAS, *Appellee*, v. RICHARD ALDAPE, *Appellant*.

Opinion filed June 29, 1990.

*Charles D. Dedmon*, assistant appellate defender, *Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Melanie S. Jack*, assistant district attorney, *Gene M. Olander*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before ABBOTT, C.J., BRAZIL, J., and FREDERICK N. STEWART, District Judge, assigned.

BRAZIL, J.: Richard Aldape appeals from the district court's revocation of his probation, arguing the district court admitted an incriminating statement he made to his parole officer while in custody but without having been given *Miranda* warnings. We affirm.

In March 1988, Aldape entered into a plea agreement in which he was found guilty of one count of burglary as defined by K.S.A. 21-3715 and was placed on supervised probation for two years. As part of the conditions of probation, Aldape was required to maintain full-time employment when possible and to pay costs.

In May 1989, an order to show cause why probation should not be revoked was issued to Aldape. The order alleged that Aldape violated the terms of his probation by failing to make payments as authorized and failing to maintain full-time employ-

ment. Aldape, who was also on parole at the time, was taken into custody pending a hearing for violating the terms of his probation.

While Aldape was in jail pending the probation revocation hearing, his parole officer conducted a violation interview in which he questioned Aldape about his employment. The parole officer had contacted Aldape's employer and had been informed that Aldape had only reported for work one day. Aldape admitted to the officer he had quit his job. The parole officer did not read Aldape his *Miranda* rights prior to conducting the interview. The parole officer testified at the probation revocation hearing about the conversation he had with Aldape concerning his employment.

The trial court concluded Aldape had violated his probation by failing to maintain employment and sentenced him to the custody of the secretary of corrections for a term of not less than one nor more than five years for the offense of burglary. Aldape timely appeals.

In *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), the Supreme Court provided protection to the privilege against self-incrimination when an individual is subject to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way. 384 U.S. at 477. Aldape argues that the protection against self-incrimination applies in this case and that this right was violated when the district court allowed the introduction of a statement made by Aldape to his parole officer when Aldape was in custody but had not been given *Miranda* warnings.

The issue of the admissibility of a probationer's statements to his probation officer without prior warning was addressed in *Minnesota v. Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136, *reh. denied* 466 U.S. 945 (1984). In *Murphy*, the defendant was on probation for false imprisonment. As a condition of probation, Murphy was required to participate in a treatment program. At a counseling session, Murphy told the counselor he had raped and murdered a teenage girl. The counselor informed Murphy's probation officer, who asked Murphy about the crime when meeting with Murphy in her office. Murphy admitted that he had committed the rape and murder. At the trial for first-degree murder, Murphy sought to suppress the statement made to the

probation officer on the grounds that it was in violation of the Fifth and Fourteenth Amendments to the United States Constitution. The Minnesota Supreme Court barred the use of Murphy's confession because the probation officer had failed to instruct Murphy as to his *Miranda* rights before questioning him. The United States Supreme Court reversed, holding that Murphy was not "in custody" for purposes of receiving *Miranda* protections since there was no arrest or restraint on freedom of movement usually associated with an arrest. 465 U.S. at 430. The Court noted that custodial arrest conveys to the suspect a message that he has no choice but to submit to the officer's will, whereas a probation interview which takes place at the probation officer's office does not pressure the suspect into believing he cannot terminate the meeting. 465 U.S. at 433. In reaching its conclusion, the Court stated:

"A State may require a probationer to appear and discuss matters that affect his probationary status; such a requirement, without more, does not give rise to a self-executing privilege. The result may be different if the questions put to the probationer, however relevant to his probationary status, call for answers that would incriminate him in a pending or later criminal prosecution. There is thus a substantial basis in our cases for concluding that if the State, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." 465 U.S. at 435.

The accompanying footnote provides:

"The situation would be different if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding. If, for example, a residential restriction were imposed as a condition of probation, it would appear unlikely that a violation of that condition would be a criminal act. Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential condition could not validly rest on the ground that the answer might be used to incriminate if the probationer was tried for another crime. Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation. Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding. *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); [citation omitted]. Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination

available to a probationer. It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.

"Our cases indicate, moreover, that a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination. Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake,' [Citations omitted.] . . . ." 465 U.S. at 435-36 n.7.

The recent Kansas case of *State v. Hartfield*, 245 Kan. 431, 435-36, 781 P.2d 1050 (1989), follows the law established in *Murphy*. The court, holding that the defendant's confession regarding a new crime made to his parole officer after the officer informed him of his *Miranda* rights was admissible, stated:

"A criminal suspect has the right to counsel during custodial interrogations under the Sixth Amendment right to counsel and the right not to incriminate oneself under the Fifth and Fourteenth Amendments. *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 101 S. Ct. 1880, *reh. denied* 452 U.S. 973 (1981); *State v. Norris*, 244 Kan. 326, 332-33, 768 P.2d 296 (1989). Law enforcement officers are required to inform the suspect of his right to have counsel present during questioning under the warnings set forth in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). Parole officers in Kansas are law enforcement agents required to read a parolee his *Miranda* rights before investigating a new felony. *State v. Lekas*, 201 Kan. 579, 442 P.2d 11 (1968)."

In *United States v. Johnson*, 455 F.2d 932 (5th Cir.), *cert. denied* 409 U.S. 856 (1972), the defendant had his probation revoked when he informed his probation officer he had violated his probation by attempting to sell illegal whiskey. Johnson argued the statement to his probation officer was inadmissible at the revocation hearing because he was never given a *Miranda* warning prior to being questioned by his probation officer. The court affirmed the district court's refusal to apply the *Miranda* exclusionary rule to a probation hearing, stating:

"A probation revocation hearing is not an adversary or a criminal proceeding, *Shaw v. Henderson*, 430 F.2d 1116 (5th Cir. 1970); *United States ex rel. Lombardino v. Heyd*, 318 F. Supp. 648, 652 (E.D. La. 1970), *aff'd* 438 F.2d 1027 (5th Cir. 1971), but is more in the nature of an administrative hearing intimately involved with the probationer's rehabilitation. *Lombardino v. Heyd*, 438 F.2d 1027. An injection of the *Miranda* protection here

could be toxic and produce a paresis in the probation process." 455 F.2d at 933.

Similarly, in *United States v. MacKenzie*, 601 F.2d 221, 222 (5th Cir. 1979), *cert. denied* 444 U.S. 1018 (1980), the court held that *Miranda* protection was inapplicable in a probation revocation hearing.

In *United States v. Deaton*, 468 F.2d 541 (5th Cir. 1972), *cert. denied* 410 U.S. 934 (1973), the court addressed the situation in which a parole officer testified regarding the commission of a new crime, harboring and concealing an escaped prisoner, by defendant Deaton. The parole officer questioned Deaton about the new crime while Deaton was in custody and without giving Deaton the *Miranda* warning. The court stated:

"We have considerable doubt as to the propriety of even calling the parole officer as a witness for such a purpose. But, pretermitting that, we have no doubt that the testimony was inadmissible unless the officer gave prior *Miranda* warnings. A parolee is under heavy psychological pressure to answer inquiries made by his parole officer, perhaps even greater than when the interrogation is by an enforcement officer. The use of admissions extracted in this manner from the parolee, in his trial on charges based on the criminal conduct inquired about, raises an issue significantly different from that in *United States v. Johnson*, 455 F.2d 932 (5th Cir. 1972). There we held that because a parole revocation hearing was not an adversary or a criminal proceeding but rather was an administrative hearing wherein the exclusionary rule has no application, prior *Miranda* warnings are not required as a condition to the admission in evidence at the revocation hearing of statements made by the parolee to the parole officer. In this instance, however, the error was not reversible." 468 F.2d at 544.

Here, Aldape told his parole officer that he was not employed. The statement was made while Aldape was in custody and was subsequently admitted at Aldape's probation revocation hearing. Aldape's probation was revoked because he failed to maintain employment. Following *Minnesota v. Murphy*, 465 U.S. 420, and other case law, the trial court properly allowed the parole officer to testify at the revocation hearing. The parole officer was not required to give Aldape *Miranda* warnings as a condition to the admission of the statements Aldape made to him.

Aldape argues that imposition of his sentence was suspended before being placed on probation; therefore, until sentence is imposed, his right against self-incrimination continues to exist.

Aldape relies on *Estelle v. Smith*, 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981); *Mempa v. Rhay*, 389 U.S. 128, 19 L. Ed. 2d 336, 88 S. Ct. 254 (1967); and *State v. Rucas*, 12 Kan. App. 2d 68, 734 P.2d 673 (1987), all of which are factually distinguishable. In *Estelle* and *Rucas*, the defendants had been convicted of a crime but had not been sentenced. In both cases, the respective courts held that the right against self-incrimination extends through sentencing. 451 U.S. at 462-63; 12 Kan. App. 2d at 73. In *Rucas*, our court, citing *Ellison v. State*, 65 Md. App. 321, 500 A.2d 650 (1985), *aff'd* 310 Md. 244, 528 A.2d 1271 (1987), went on to explain that the risk of incrimination continues until there is a final judgment in a case and a right to appeal, and stated:

"In Kansas there is no 'final judgment in the case' from which an appeal can be taken until there has been both conviction and sentencing, or suspension of sentence. *State v. McDaniels*, 237 Kan. 767, 770, 703 P.2d 789 (1985); *City of Kansas City v. Sherman*, 9 Kan. App. 2d 757, 758-59, 687 P.2d 1383 (1984), *City of Topeka v. Martin*, 3 Kan. App. 2d 105, 590 P.2d 106 (1979)." 12 Kan. App. 2d at 72-73.

The *Mempa* case involves a specific law in the State of Washington in which a revocation of probation hearing becomes a deferred sentencing proceeding if the court determines that probation should be terminated. It is not applicable here.

Here, the judgment became final and appealable when the district court suspended imposition of sentence and placed Aldape on probation for two years. Aldape was under sentence from the beginning of his probation but was given conditional liberty which could be revoked if he violated the conditions of probation. *Shaw v. Henderson*, 430 F.2d 1116 (5th Cir. 1970). Aldape's right against self-incrimination did not extend to the probation revocation hearing.

Affirmed.