IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,190

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL EUGENE GEORGE JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

Attempted aggravated robbery, aggravated assault, and attempted distribution or possession with intent to distribute a controlled substance are not multiplicitous with one another because the statutes for each require some element not required by the other two.

2.

A defendant may not evade the contemporaneous objection requirement demanded by K.S.A. 60-404 by asserting an evidentiary claim on appeal under the guise of prosecutorial error.

Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Opinion filed June 26, 2020. Affirmed.

*Linda J. Lobmeyer*, of Calihan Law Firm, P.A., of Garden City, was on the brief for appellant.

*William C. Votypka*, deputy county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

1

The opinion of the court was delivered by

STEGALL, J.: Michael Eugene George Jr. appeals from five criminal convictions, including first-degree murder, attempted distribution of a controlled substance, attempted aggravated robbery, aggravated assault, and criminal possession of a firearm. George argues four instances of reversible error. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

During a robbery gone bad, George shot and killed Karlton Waechter. George and Waechter, along with Jeffrey Rigdon and Mariah Duran had been riding together in a four-door black truck to pick up an Xbox console which Rigdon planned to trade for some drugs. Duran drove. George was wearing jeans, a long-sleeved green shirt, and a white hoodie with "some kind of designs on it."

When the group arrived at the trailer home where the Xbox console was located, George got out of the truck to retrieve it. Instead, however, George drew and pointed a black pistol at Duran's head. Rigdon recognized the pistol as one he had seen George with before. George thrust the pistol against Duran's head through the open driver-side window and demanded Duran give him money and drugs.

Duran and Waechter attempted to comply. They placed their money on the center console, and Duran informed George she did not have any drugs. George became angry. Duran tried to calm the situation and told George he could have their money, phones, and the truck and assured George they would not call police. George struck Duran in the face with the pistol. Waechter attempted to exit the vehicle.

George pulled the gun away from Duran's head and began to thrust it back at Duran for another strike. But Duran ducked and George fired the gun three or four times.

2

Rigdon then fled the vehicle. He saw Duran "leaning still on the steering wheel" and Waechter "leaning . . . towards the center console." Rigdon ran and heard yet another gunshot. Rigdon called his father and told him "[t]hat Michael George shot some dude in a truck."

Inside the truck, Duran saw Waechter in a "slumped position" with the passenger door open. Duran fell out of the truck and lay in the middle of the street. Later, Duran told the responding officer, "They shot him, they shot him . . . . It was Michael George." A resident of the trailer park saw a black man run across her yard carrying a gun. The man wore black shoes, blue jeans, a "rainbow color" sweater, and a white t-shirt. The sweater was mostly "[g]reen and yellow."

Police located and apprehended George, wearing a white shirt and blue jeans, in an area due east of the trailer park. Police also recovered a white sweatshirt from the trailer park. A K-9 unit located a Hi-Point .40 caliber semi-automatic pistol with one round in the chamber and a plastic bag containing a green sweatshirt. Other physical evidence recovered from the truck included two .40 caliber shell casings and an ammunition magazine containing six live rounds of the same type recovered from the Hi-Point pistol chamber. The magazine was manufactured for and operated properly in the pistol.

Waechter's autopsy revealed three fatal gunshot wounds fired between 2 and 3 feet away. The bullets recovered from Waechter's body matched test-fired rounds from the Hi-Point, although the recovered rounds "lack[ed] sufficient individual markings" whereby the examiner "could state conclusively . . . that [the Hi-Point pistol] only fired the rounds." But, testing did indicate that "a general group of guns like [the Hi-Point pistol] . . . could have fired" them. The shell casings recovered from inside the truck were matched to the Hi-Point.

3

A jury convicted George of five counts of criminal conduct, including first-degree murder, attempted distribution of a controlled substance, attempted aggravated robbery, aggravated assault, and criminal possession of a firearm. He received a controlling 791-month term and directly appeals under K.S.A. 2019 Supp. 22-3601(b)(4).

DISCUSSION

George makes four claims of reversible error. First, he complains his convictions were multiplicitous. Second, George alleges prosecutorial error. Third, he argues the trial court erred when it upheld Fierro-Acevedo's invocation of his Fifth Amendment privilege and excluded his testimony. Fourth, he claims cumulative error denied him a fair trial. Finding a single harmless error on appeal, we affirm the district court.

*George's convictions are not multiplicitous.*

George first claims that several of his convictions were multiplicitous and therefore violated the double jeopardy clauses of the Fifth Amendment to the United States Constitution and §10 of the Kansas Constitution Bill of Rights. He argues that three of his convictions "folded" into one another and became a single offense.

George alleges that his attempted robbery conviction merged with his attempted distribution of a controlled substance conviction because "[t]he overt act toward the commission of the aggravated robbery was his attempt to possess a controlled substance." Not stopping there, George believes "[t]he elements for the aggravate[d] assault [conviction] merge with the attempted aggravated robbery as well." He details that "[t]he elements of the aggravated assault [conviction] are [the] same as the element[s] of the aggravated robbery requiring a threat of bodily force and when armed with a dangerous weapon."

4

He directs us to a passage from the State's closing argument as evidence of the three charges' interconnectedness:

> "Michael George was attempting to take methamphetamine from Mariah Duran with this dangerous weapon. Michael George placed this 40 caliber Hi-Point semi-automatic pistol to Mariah Duran's head to compel her compliance with his demands. It was Michael George's threats that caused the shuffling movement in the truck, which ultimately resulted in the death of Karlton Waechter, while Michael George was committing or attempting to commit an aggravated robbery."

*Standard of Review*

We consider multiplicity issues and statutory questions with an unlimited review. *State v. Thompson*, 287 Kan. 238, 243, 200 P.3d 22 (2009); see also *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019) ("Multiplicity challenges raise questions of law subject to unlimited appellate review. In addition, the interpretation of statutes necessary to multiplicity analysis is subject to de novo appellate review. [Citations omitted.]").

> "When reviewing a statute, an appellate court first attempts to give effect to the intent of the legislature as expressed. When the language of a statute is plain and unambiguous, the court must give effect to that language, rather than determine what the law should or should not be. The court will not speculate as to legislative intent or read such a statute to add something not readily found in it." *State v. Harris*, 284 Kan. 560, 572, 162 P.3d 28 (2007).

Our analysis "will not resort to canons of statutory construction or consult legislative history if the language of a statute is clear and unambiguous as written." *Thompson*, 287 Kan. at 243-44.

*Analysis*

"[M]ultiplicity is the charging of a single offense in several counts of a complaint or information." 287 Kan. at 244. This practice may be constitutionally dubious because "it creates the potential for multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights." 287 Kan. at 244.

In *State v. Schoonover*, 281 Kan. 453, 496-98, 133 P.3d 48 (2006), we enunciated a framework for determining whether convictions are multiplicitous. We ask "whether the convictions are for the same offense." 281 Kan. at 496. In making this inquiry, we first decide whether "the convictions arise from the same conduct." 281 Kan. at 496. If they do, we then decide whether "[b]y statutory definition are there two offenses or only one." 281 Kan. at 497. Convictions based on different statutes may be multiplicitous, but only if "the statutes upon which the convictions are based contain an identity of elements." *Thompson*, 287 Kan. at 244. Here we are confronted with three convictions arising from the same conduct but grounded in three different statutes. So we must look to the elements of each crime.

*Attempted aggravated robbery and aggravated assault are not multiplicitous.*

We begin by comparing attempted aggravated robbery and aggravated assault. George was convicted of aggravated assault under K.S.A. 2019 Supp. 21-5412(b)(1). That statute defines aggravated assault as:

> "(a) Assault is knowingly placing another person in reasonable apprehension of immediate bodily harm;

6

"(b) Aggravated assault is assault, as defined in subsection (a), committed:

(1) With a deadly weapon." K.S.A. 2019 Supp. 21-5412(a), (b)(1).

George was also convicted of attempted aggravated robbery in violation of K.S.A. 2019 Supp. 21-5420(b) and K.S.A. 2019 Supp. 21-5301. K.S.A. 2019 Supp. 21-5420 states:

"(b) Aggravated robbery is robbery, as defined in subsection (a), when committed by a person who:

(1)  Is armed with a dangerous weapon; or

(2) inflicts bodily harm upon any person in the course of such robbery."

And K.S.A. 2019 Supp. 21-5301(a) reads:

"(a) An attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime."

To determine if there is an identity of elements creating multiplicitous convictions, we ask "whether each offense requires proof of an element not necessary to prove the other offense." *Schoonover*, 281 Kan. 453, Syl. ¶ 12.

Applying this test, we can easily conclude that aggravated assault and attempted aggravated robbery are not multiplicitous. While both require the use of a deadly or dangerous weapon, this is the only common element. See K.S.A. 2019 Supp. 21-5412(b)(1); K.S.A. 2019 Supp. 21-5420(b); K.S.A. 2019 Supp. 21-5301. Aggravated assault requires "knowingly placing another person in reasonable apprehension of

7

immediate bodily harm" not required by the attempted aggravated robbery statute. K.S.A. 2019 Supp. 21-5412(a). Conversely, attempted aggravated robbery includes the statutory definition "robbery, as defined in" K.S.A. 2019 Supp. 21-5420(a), which defines robbery as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." This element is not required by the aggravated assault statute.

Also of note, we and various Court of Appeals panels have frequently upheld cases wherein a criminal defendant was convicted of both aggravated assault and attempted aggravated robbery arising from the same conduct. See, e.g., *State v. Penn*, 271 Kan. 561, 23 P.3d 889 (2001); *State v. Lax-Dudley*, No. 119,253, 2019 WL 5849919, at *8 (Kan. App. 2019) (unpublished opinion); *State v. Pruitt*, No. 116,535, 2018 WL 2170212, at *13 (Kan. App. 2018) (unpublished opinion); *State v. Clayborn*, No. 115,437, 2017 WL 4340446, at *7 (Kan. App. 2017) (unpublished opinion).

Having failed the identity of elements test, we hold attempted aggravated robbery and aggravated assault are not multiplicitous.

*Attempted distribution or possession with intent to distribute a controlled substance and attempted aggravated robbery are not multiplicitous.*

Following this same template, attempted distribution or possession with intent to distribute a controlled substance is not multiplicitous with attempted aggravated robbery because there is no identity of elements in the statutory definition of the crimes. Attempted aggravated robbery requires the defendant's attempt to "knowingly tak[e] property from the person or presence of another by force or by threat," which is not an element of attempted distribution or possession. K.S.A. 2019 Supp. 21-5420(b); K.S.A. 2019 Supp. 21-5301; K.S.A. 2019 Supp. 21-5705(a)(1), (d)(3)(C). Similarly, attempted distribution or possession necessitates a criminal actor's attempt to "distribute or possess

8

with the intent to distribute . . . [o]piates, opium or narcotic drugs, or any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107, and amendments thereto." K.S.A. 2019 Supp. 21-5705(a)(1). This is not a necessary element of attempted aggravated robbery. See K.S.A. 2019 Supp. 21-5420(b); K.S.A. 2019 Supp. 21-5301.

George is correct that "[t]he overt act toward the commission of the aggravated robbery was his attempt to possess a controlled substance," but this single similarity does not render his convictions multiplicitous under *Schoonover* and *Thompson*. We hold George's attempted distribution or possession conviction is not multiplicitous with his attempted aggravated robbery conviction.

*Attempted distribution or possession with intent to distribute a controlled substance is not multiplicitous with aggravated assault.*

In much the same vein, George's attempted distribution or possession conviction is not multiplicitous with his aggravated assault conviction. Yet again, we find no identity of elements because each "requires proof of an element not necessary to prove the other offense." *Schoonover*, 281 Kan. 453, Syl. ¶ 12. Aggravated assault requires "knowingly placing another person in reasonable apprehension of immediate bodily harm" and attempted distribution or possession requires someone attempt to "distribute or possess with the intent to distribute" certain contraband. See K.S.A. 2019 Supp. 21-5412(b)(1); K.S.A. 2019 Supp. 21-5705(a)(1). Because each contain elements independent of the other, they are not multiplicitous.

*George failed to preserve his evidentiary claim and cannot reframe the issue as one of prosecutorial error.*

Next, George maintains that the State committed prosecutorial error when it made certain comments during its cross-examination of Paul Guebara. Guebara was Rigdon's cellmate after police arrested Rigdon in connection with Waechter's death. Guebara

9

testified for the defense and claimed that while incarcerated, Rigdon told Guebara that he shot Waechter, not George.

During cross-examination, this exchange occurred between Guebara and the State:

"[STATE]:  And who—do you know who Mr. Rigdon's attorney was?

"[GUEBARA]:  Yes. I wrote him a letter, because he asked me to.

"[STATE]:  Who was Mr. Rigdon's attorney?

"[GUEBARA]:  Douglas Spencer.

"[STATE]:  And you know Mr. Spencer well, don't you?

"[GUEBARA]:  Yes, I do.

"[STATE]:  And he represented you in your underlying—in your other criminal case?

"[GUEBARA]:  He sure did.

"[STATE]:  And were you not happy with the representation you received from Mr. Spencer?

"[GUEBARA]:  No. And what does that got to do with this case?

. . . .

"[STATE]:  *Now, in fact, the relationship between you and Mr. Spencer got so bad that you threatened to stab him, didn't you?*

"[DEFENSE ATTORNEY]:  *Objection.*

10

"[GUEBARA]: *No, I did not.*

"[DEFENSE ATTORNEY]: *Objection. That's beyond the scope.*

"THE COURT: Objection is sustained.

"[GUEBARA]: And I did not threaten to stab him, period.

"[STATE]: Judge, I think it is relevant. Can I respond, please?

"THE COURT: You can respond.

"[STATE]: Judge, it goes to his bias against Mr. Spencer and Mr. Rigdon by association—

"[GUEBARA]: Rigdon is my cousin, my blood—I mean, he's got children with my family. He's part of my family. I have no animosity towards him.

"THE COURT: Mr. Vrana, you've established the connection. You can move on." (Emphasis added.)

George claims that his counsel properly "objected in compliance with K.S.A. 60-404" and continues that "the damage the State's attorney sought was accomplished despite the objection from [the] defense." According to George, this exchange violates K.S.A. 60-422(c) because it goes to a trait of Guebara's character other than honesty or veracity. George concludes the question here goes "outside of the latitude given to prosecutors in that it violates statutory rules of admissibility" and was of a constitutional magnitude, therefore creating reversible prosecutorial error.

11

We cannot, however, reach the merits of George's claim. He did not properly preserve the issue for appeal. George assert's he "objected in compliance with K.S.A. 60-404." That statute provides:

"A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence *unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection.*" (Emphasis added.) K.S.A. 60-404.

We have adopted a bright-line interpretation of K.S.A. 60-404. See *State v. Garcia-Garcia*, 309 Kan. 801, 810, 441 P.3d 52 (2019) ("Under K.S.A. 60-404, '"evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial."'"). Moreover, it is not sufficient for a defendant to object on one ground and argue another ground on appeal. See 309 Kan. at 810 ("The contemporaneous objection rule is not satisfied by objecting on one ground at trial and arguing another ground on appeal because it would undercut the statute's purpose."); *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009) ("[T]he trial court must be provided the *specific objection* so it may consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error." [Emphasis added.]).

George is correct that his counsel objected to the State's question. However, George's counsel provided a single rationale: "That's beyond the scope." George's attorney did not argue any grounds relating to impeachment, character evidence, or the like. We find this objection insufficient for appellate review of this issue now claimed. See *Garcia-Garcia*, 309 Kan. at 810.

To evade this preservation problem, George frames the issue as one of prosecutorial error rather than as an evidentiary ruling. But this cannot save his claim. We

12

discussed this maneuver in *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009). In *King*, a prosecutor questioned a criminal defendant "about his continued silence after receiving *Miranda* warnings." 288 Kan. at 335. The defendant failed to object to the questions. Then, the defendant attempted to raise the issue on appeal under the guise of prosecutorial error, arguing a *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), violation. 288 Kan. at 335. The Court of Appeals held that it could not reach the merits of the claim for want of a proper contemporaneous objection under K.S.A. 60-404. 288 Kan. at 335.

We requested the parties answer this question in their briefs:

"'Whether prosecutorial misconduct analysis should distinguish between behavior involving admission or exclusion of evidence (*e.g.*, questioning of witnesses on topics covered by a previously granted motion in limine or on a defendant's invocation of his [or] her right to silence or right to counsel) and behavior involving a prosecutor's direct communication with members of the jury (*e.g.*, voir dire, opening statement, closing argument).'" 288 Kan. at 336.

Our analysis recognized that some contradiction existed "between the statutorily mandated contemporaneous-objection rule and the appellate standard for reviewing claims of prosecutorial misconduct." 288 Kan. at 341. We then addressed what prosecutorial actions constitute evidentiary questions and which constitute prosecutorial error claims:

"The contemporaneous-objection requirement of K.S.A. 60-404 specifically applies to the admission or exclusion of evidence. While a prosecutor's questions at trial may not be evidence, such questions call for an answer, and both the question and answer given become part of the evidentiary or prosecutorial misconduct claim. All of this occurs in the questioning of a witness upon direct or cross-examination—traditionally viewed as evidentiary matters that a district court judge may admit or exclude. The conclusion of the Court of Appeals that 'the gravamen of [the criminal defendant's] complaint is that a

13

*Doyle* violation occurred during questioning of [the criminal defendant] that caused the erroneous admission of evidence' is a particularly apt description of what occurred in this case. [Citation omitted.]" 288 Kan. at 346-47.

Further, we explained that a prosecutor is permitted leading questions on cross-examination and therefore the "information" to be used as evidence is contained in the question itself, often confirmed or denied by the witness on the stand. 288 Kan. at 347.

We concluded:

"K.S.A. 60-404 clearly states that a 'verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed' on the basis of an evidentiary issue absent a timely and specific objection. . . . While the legislature has created exceptions to the rule requiring objections to preserve an issue for appeal in some non-evidentiary contexts, the legislature did not establish such an exception to the mandate of K.S.A. 60-404. . . . Rather, the legislature's intent in enacting K.S.A. 60-404 is clear: a party must lodge a timely and specific objection to the admission or exclusion of evidence in order to preserve the evidentiary question for review.

"We stress today the importance of this legislative mandate. K.S.A. 60-404 dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial. Although our past decisions may have relaxed the objection requirement in the evidentiary context, this practice not only has led to confusion as to the standards that should be applied on appeal, but also has de-emphasized the role of counsel at trial and has impaired the gate-keeping function of district courts in this state. More importantly, this practice of reviewing evidentiary questions when no objection has been lodged runs contrary to the legislature's clearly stated intent in K.S.A. 60-404.

"*We disapprove of our previous decisions that have granted appellate review of a prosecutor's questions and a witness' answers to those questions during trial without objection by way of a prosecutorial misconduct claim. From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims—including*

14

*questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal.*

"This court will continue to review a prosecutor's comments to a jury during voir dire, opening statement, or closing argument which are not evidence on the basis of prosecutorial misconduct even when no objection was lodged at the trial level, although the presence or absence of an objection may figure into our analysis of the alleged misconduct. [Citations omitted.]" (Emphasis added.) 288 Kan. at 348-49.

We further clarified in the case syllabus which prosecutor actions fall where:

"5. In accordance with the plain language of K.S.A. 60-404, evidentiary claims— including claims concerning questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection before those claims may be reviewed on appeal.

"6. *When a defendant raises an issue on appeal in the prosecutorial misconduct context that is truly an evidentiary question—that is, any claim relating to a prosecutor's questions or answers during direct or cross-examination, or any other claim relating to the admission or exclusion of evidence—the defendant's characterization of the issue cannot avoid the statutory requirement of K.S.A. 60-404 requiring a timely and specific objection at trial. Without objection, such claims are not preserved for appellate review.*" (Emphasis added.) 288 Kan. 333, Syl. ¶¶ 5-6.

So, despite George's assertion "that the prosecutor committed reversible misconduct by commenting on" Guebara's credibility, this issue is "truly an evidentiary question that was not preserved for appeal." See 288 Kan. at 342. This alleged error occurred during cross-examination of a witness and therefore was an evidentiary issue, not a question of prosecutorial error. See 288 Kan. 333, Syl. ¶ 6.

15

Accordingly, we hold that George failed to meet his burden under the contemporaneous objection rule to provide the specific ground he now wishes to argue on appeal. See *Garcia-Garcia*, 309 Kan. at 810. George only objected to the State's question that it was "beyond the scope" of direct examination. Therefore, "[t]he contemporaneous objection rule is not satisfied." See 309 Kan. at 810. In light of the rule established in *King*, and in the absence of a proper objection under K.S.A. 60-404, the issue is not preserved for appellate review. See *King*, 288 Kan. 333, Syl. ¶¶ 5-6.

*Error resulting from the district court's exclusion of Fierro-Acevedo's testimony, if any, was harmless.*

George next complains that the district court erred when it permitted Fierro-Acevedo to invoke his Fifth Amendment protection against self-incrimination and refuse to testify.

*Additional Facts*

Fierro-Acevedo was the individual who was supposed to receive the Xbox in exchange for drugs. At trial, George attempted to call Fierro-Acevedo to testify. The district court held a conference outside the jury's presence, and Fierro-Acevedo told the court that he wished "to exercise his privilege against self-incrimination and refuse to testify." The district court then examined whether Fierro-Acevedo still retained that right in light of the fact that "he [was] convicted of second-degree murder and [was] sentenced and his case is currently up on appeal."

George's attorneys and the State agreed that Fierro-Acevedo already entered a plea in a companion case and received a sentence, and therefore Fierro-Acevedo's right against self-incrimination had expired. Further, George's attorneys argued that Fierro-Acevedo's pending appeal did not affect this outcome because he only appealed

16

sentencing issues. Fierro-Acevedo disagreed and claimed that a defendant's right against self-incrimination continues until any appeal has expired.

The district court weighed these issues and noted its concern that the Fifth Amendment right attaches at least until a defendant's sentencing. The district court reasoned that if Fierro-Acevedo's sentence were overturned on appeal, he would face a resentencing after being compelled to testify, which may result in a Fifth Amendment violation. The court concluded by saying: "I guess if I'm going to err, I'm going to err on the side of preserving his privilege against self-incrimination. I'm going to recognize that privilege."

George's attorneys proffered that Fierro-Acevedo would have testified "to his dealings with Mariah Duran, with Jeff Rigdon, his involvement in the case, in the shooting. Rigdon claimed that he had threatened him, to steal drugs from Mariah Duran."

Because George and the State were actually in agreement that Fierro-Acevedo should have been allowed to testify, they negotiated a work-around in which Fierro-Acevedo's version of events would be introduced at trial through Detective Freddie Strawder. Detective Strawder had interviewed Fierro-Acevedo extensively and had covered all the subject matter of George's proffer concerning what Fierro-Acevedo would testify to. The State agreed to permit Detective Strawder to testify about that interview without any objections as to hearsay or foundation, and Detective Strawder did testify at length on these matters.

Now on appeal, George claims the trial court erroneously upheld Fierro-Acevedo's Fifth Amendment invocation and thus erroneously excluded his testimony. George recapitulates the arguments made to the trial court by both parties. He claims that because Fierro-Acevedo entered a plea, had already been sentenced, and was appealing the

17

sentence only, his Fifth Amendment privilege against self-incrimination had expired. George argues that our caselaw dictates "that after plea and sentencing, a defendant no longer has a privilege against self-incrimination." (Citing *State v. Longobardi*, 243 Kan. 404, Syl. ¶ 1, 756 P.2d 1098 [1988]; *State v. Bailey*, 292 Kan. 449, 463, 255 P.3d 19 [2011].)

The State frames this issue another way. It contends the correct question "is whether the district judge interfered with George's constitutional right to present a defense and denied George a right to a fair trial." Despite the district court's ruling excluding Fierro-Acevedo, the State points out that George was able to present Fierro-Acevedo's testimony through Detective Strawder, and therefore Fierro-Acevedo's unavailability was a "moot point." Moreover, the State urges us that our standard of review should be abuse of discretion because at the heart of this issue is the admission or exclusion of evidence, and the district court did not abuse its discretion because it relied on *State v. Beard*, 273 Kan. 789, 807-08, 46 P.3d 1185 (2002), when it excluded Fierro-Acevedo's testimony. Finally, the State alleges that George's proffer was inadequate "to determine what evidence George claims was excluded" and nudges us to apply the invited error doctrine because George's attorney agreed to the Detective Strawder testimony as a solution. Alternatively, the State alleges any resulting error was harmless because George essentially presented Fierro-Acevedo's testimony through Detective Strawder, including direct quotes by Fierro-Acevedo.

*Standard of Review*

The decision to admit or exclude evidence is reviewed for abuse of discretion. *State v. Ross*, 310 Kan. 216, 224, 445 P.3d 726 (2019). Discretion is abused whenever it is based on an error of law. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). The determination of whether a person can lawfully claim a Fifth Amendment privilege against self-incrimination is a question of law we review de novo. *State v. Delacruz*, 307

18

Kan. 523, 533, 411 P.3d 1207 (2018) (citing *State v. Carapezza*, 286 Kan. 992, 1007, 191 P.3d 256 [2008]). Thus, even though George's ultimate complaint is an exclusion of evidence, the resolution of the issue turns on a question of law.

If the district court did erroneously exclude Fierro-Acevedo's testimony, we would consider the prejudice, if any, to George's case. "We review any erroneous exclusion of evidence under the harmless error test enumerated in K.S.A. 2019 Supp. 60-261, 'which asks whether "'there is a reasonable probability that the error did or will affect the outcome of the trial in light of the entire record.'"'" *State v. Broxton*, 311 Kan. __, __, 461 P.3d 54, 61 (2020).

*Analysis*

Fierro-Acevedo had an appeal pending before the Court of Appeals at the time of George's trial. The district court sentenced Fierro-Acevedo in connection with these events after he entered a nolo contendere plea on August 31, 2016. George's trial commenced the next month, on September 26, 2016. The Court of Appeals issued its opinion in *State v. Fierro-Acevedo*, No. 116, 860, 2017 WL 5907931, at *1 (Kan. App. 2017) (unpublished opinion), on December 1, 2017. The short opinion considered the sole issue of whether the district court erred when it imposed approximately $7,000 in restitution fees upon Fierro-Acevedo. 2017 WL 5907931, at *1. The panel explained that "Fierro-Acevedo entered a plea of no-contest to second-degree murder and solicitation of robbery" and that the restitution in the case was joint and severally liable "with codefendants Michael George and Jeffrey Rigdon in their respective criminal cases." 2017 WL 5907931, at *1. Ultimately, the panel below affirmed the district court. 2017 WL 5907931, at *3. This court denied review of Fierro-Acevedo's case on August 31, 2018. *State v. Fierro-Acevedo*, 308 Kan. 1597 (2018).

The Fifth Amendment of the United States Constitution provides a right "of any person not to 'be compelled in any criminal case to be a witness against himself.'" *Schmerber v. California*, 384 U.S. 757, 760, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (quoting *Twining v. New Jersey*, 211 U.S. 78, 93, 29 S. Ct. 14, 53 L. Ed. 97 [1908]). This protection—"'the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence'"— applies to the states through the Fourteenth Amendment. *State v. Brown*, 286 Kan. 170, 172-73, 182 P.3d 1205 (2008). Section 10 of the Kansas Constitution Bill of Rights provides the same protection. *State v. Haze*, 218 Kan. 60, 62, 542 P.2d 720 (1975).

The most straightforward application of this right is refusing to testify at one's own criminal trial. But, the Fifth Amendment's protections are more robust. Indeed, both Kansas Appellate Courts and the United States Supreme Court have recognized that the Fifth Amendment right against self-incrimination can be utilized in other proceedings where it is likely that a defendant's answer could result in criminal charges. *State v. Smith*, 268 Kan. 222, 235, 993 P.2d 1213 (1999) ("[W]e note that the Fifth Amendment privilege '"can be claimed in any proceeding, be it criminal or civil, administrative or judicial, investigatory or adjudicatory [citation omitted], and it protects any disclosures which the witness may reasonably apprehend could be used in a criminal prosecution or which could lead to other evidence that might be so used."'") (quoting *State v. Lekas*, 201 Kan. 579, 589, 442 P.2d 11 [1968], and *Murphy v. Waterfront Comm'n.*, 378 U.S. 52, 94, 84 S. Ct. 1594, 12 L. Ed. 2d 678 [1964] [White, J., concurring]).

There is no doubt that the privilege against self-incrimination extends at least through sentencing. *State v. Gary*, 282 Kan. 232, 249, 144 P.3d 634 (2006); *State v. Valdez*, 266 Kan. 774, 794, 977 P.2d 242 (1999) ("There is no doubt that an individual's right against self-incrimination extends through sentencing."); *State v. Aldape*, 14 Kan. App. 2d 521, 526, 794 P.2d 672 (1990) ("[T]he right against self-incrimination extends through sentencing."); see also *Mitchell v. United States*, 526 U.S. 314, 327, 119 S. Ct.

1307, 143 L. Ed. 2d 424 (1999) ("[A] defendant who awaits sentencing after having pleaded guilty may assert the privilege against self-incrimination if called as a witness in the trial of a codefendant, in part because of the danger of responding 'to questions that might have an adverse impact on his sentence or on his prosecution for other crimes.'").

Elsewhere, we framed the extent of the right more broadly as extending through the completion of all appeals. *Smith*, 268 Kan. at 235 (The right "extends until there is a final judgment in a case and a right to appeal has expired."). But in other cases, we have suggested that a guilty plea may result in a waiver of the privilege against self-incrimination during the pendency of any appeal. For example, in *State v. Soto*, 301 Kan. 969, 980, 349 P.3d 1256 (2015), we stated that the "privilege against self-incrimination *ends after sentence is imposed where a plea of guilty has been regularly accepted* by the court, and no motion is made to withdraw it.'" (Emphasis added.) (Quoting *Bailey*, 292 Kan. at 460, and *Longobardi*, 243 Kan. 404, Syl. ¶ 1.)

Today we decline to decide whether a plea of nolo contendere waives the privilege against self-incrimination after sentencing but before the conclusion of the direct appeals. Because even if we assume error, we can easily conclude the error is harmless. There is no "'reasonable probability that the error . . . affect[ed] the outcome of the trial in light of the entire record.'" *Broxton*, 461 P.3d at 61.

This is so because the substance of Fierro-Acevedo's proffered testimony was entirely presented at trial through the testimony of Detective Strawder. George even agreed that Detective Strawder's testimony, free from foundational objections, would "be sufficient for the defense in lieu of [Fierro-Acevedo's] testimony."

George has now suggested that there may have been an additional value to Fierro-Acevedo's direct testimony that was not presented through Detective Strawder. George's proffer, however, is inadequate to preserve any potential testimony outside the substance

covered by the admitted testimony of Detective Strawder. Given this, we conclude that even assuming error in excluding Fierro-Acevedo's testimony, such error would be harmless.

*The cumulative error doctrine does not apply.*

Finally, George asserts cumulative error denied his right to a fair trial. As a result, he requests we reverse his convictions and remand the case to the district court for a new trial.

Under the cumulative error doctrine, we may reverse when the totality of the circumstances demonstrate that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). A single error cannot support reversal under the cumulative error doctrine, because— simply put—there is nothing for us to aggregate. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). Because we have assumed only one error, the cumulative error doctrine does not apply. See *Gonzalez*, 307 Kan. at 598.

Affirmed.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Michael E. Ward was appointed to hear case No. 120,190 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.