NOT DESIGNATED FOR PUBLICATION

No. 126,179

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SHERMAN ARTHUR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER J. ROUSH, judge. Submitted without oral argument. Opinion filed June 21, 2024. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., MALONE and WARNER, JJ.

PER CURIAM: Sherman Arthur appeals his aggravated battery conviction following a jury trial. After a night out drinking, Arthur and his two friends fought with Hector Vazquez. While Arthur's friends landed the first punches on Vazquez, Arthur landed the last blow on Vazquez directly in front of a police officer. The attack left Vazquez with a broken jaw, which required surgery and a lengthy recovery. On appeal, Arthur claims: (1) The district court abused its discretion by permitting the State to present the expert testimony of Vazquez' treating physician after it failed to disclose the substance of his testimony before trial as required by K.S.A. 22-3212(b)(2); (2) the

1

district court abused its discretion by denying a motion for new trial based on an alleged violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed 2d 215 (1963); and (3) cumulative error deprived him of his right to a fair trial. After thoroughly reviewing the record, we reject Arthur's claims and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of October 10, 2021, after having a beer with friends at a bar in Old Town in Wichita, Vazquez became involved in a physical encounter outside the bar with Arthur and his two companions, Sonny Brown and Juan Salazar. The entire incident was captured on security cameras, so there is no dispute about what happened.

Vasquez got in his car parked at the intersection of Rock Island Road and 2nd Street to head home. He slowly backed onto Rock Island Road, then put his car in park and fastened his seatbelt. As he was stopped, he heard something bump into his vehicle. Unbeknownst to Vazquez, Arthur, Brown and Salazar were standing in the road behind Vasquez' car. Vazquez slowly rolled forward toward the stop sign at 2nd Street. But as he approached the intersection, Arthur walked up and leaned onto the trunk of Vasquez' car. Salazar tried to pull Arthur back from the car while Brown laughed at his antics.

Upset, Vazquez got out and confronted Arthur, briskly stepping towards him and pushing him back. When Vazquez shoved Arthur, Brown and Salazar rushed forward and both men struck Vazquez in the face. Vazquez and Salazar began to tussle, and the pair backed into the middle of 2nd Street, where a car nearly ran into them. Brown followed closely behind as Vazquez and Salazar struggled. When the pair stopped in the middle of the street, Brown again punched Vazquez in the face, knocking him to the ground. At that point, Arthur was still standing on Rock Island Road. But as Vazquez crumpled under Brown's punch, Arthur approached and stood over Vasquez who was lying on the street.

2

Sergeant Brian Mock of the Wichita Police Department, who was out ensuring bar patrons cleared out of Old Town as the bars closed, pulled up in his police vehicle directly behind Arthur and Vasquez. Arthur, apparently unaware of the police vehicle behind him, continued to hover over Vazquez. As Vasquez tried to get up off the street, Arthur punched Vazquez with his right fist directly across Vasquez' left jaw, nearly knocking him down again. Mock, who was still getting out of his vehicle as Arthur's punch landed, stepped forward and grabbed Arthur by the arm. Arthur pulled away from Mock and tried to run, but he tripped and fell to the ground. Mock shot Arthur with a Taser when he tried to get up and flee. Mock then arrested Arthur.

Vazquez got back in his car, intending to head back home, but he quickly realized that he had severe injuries when his jaw was not functioning properly. Vazquez briefly spoke to the police officers who were gathering information from witnesses of the attack. Vazquez told the officer that he believed he was punched two times, but the fight happened so quickly, he was not sure which of the three men had hit him or when. He later provided a written statement indicating that he believed that the first punch from one of the men who hit him behind his car had broken his jaw.

The next day, Vazquez went to the hospital and received stiches for a laceration over his left eye and was told he would need surgery to fix his fractured jaw. John Gagnon, a dentist and oral and maxillofacial surgeon, performed a closed reduction surgery to wire Vazquez' teeth and jaw back into place. Vazquez' jaw was wired shut for the next eight weeks and then banded together for two weeks afterward.

On February 8, 2022, the State charged Arthur and Brown with one count of aggravated battery by knowingly causing great bodily harm or disfigurement of another person. The State charged Salazar with one count of misdemeanor battery. Brown later pled guilty to three amended counts of misdemeanor battery. He was ordered to write an apology letter to Vasquez and to pay restitution for his injuries.

Arthur's case proceeded to a jury trial on December 5, 2022. On the first day of trial, Vazquez and Mock both testified, and the jury was shown the surveillance footage of the entire incident. On the morning of the second day of trial, the State conveyed that it intended to present expert testimony from Gagnon about Vasquez' injuries. The State had moved to endorse Gagnon as a witness and had provided Vazquez' medical records and Gagnon's curriculum vitae, but it had never disclosed a report or summary of his testimony as required by K.S.A. 22-3212(b)(2). Arthur's counsel objected, arguing that the State should not be allowed to elicit any expert opinions about the cause of Vazquez' broken jaw. To address Arthur's concerns about not having received an expert witness report, the district court allowed the parties to conduct a voir dire outside the presence of the jury to determine the contours of Gagnon's proposed testimony.

During the voir dire, Gagnon stated that he could not tell which punch broke Vazquez' jaw. When asked if it was possible that one punch could have caused the fracture, he replied, "Anything is possible." That said, he clarified that the punch responsible for the break must have landed on the left side of Vazquez' face due to the mechanics of such an injury. When asked to give his opinion about whether more punches made it more likely to break a jaw, Gagnon responded, "I think that's elementary. I think, obviously, more hits, more potential for trauma." After listening to the voir dire, the district court allowed Gagnon to testify before the jury. Arthur's attorney again objected, arguing that Gagnon should not be allowed to answer hypothetical questions about the number of punches thrown or whether a single punch could cause a broken jaw, although he admitted the second portion would be "kind of harmless if you allow it."

Before the jury, Gagnon summarized his treatment of Vazquez and stated that it was impossible to tell which of the blows broke Vazquez' jaw. Gagnon noted that he had not seen the surveillance video and that Vazquez did not tell him anything about how the incident occurred. Gagnon agreed that more punches increased the likelihood of injury.

4

But he stated, "I see the injuries after it's done. I wasn't there, I don't know what happened." Arthur's attorney presented Gagnon with Vazquez' written statement that he thought his jaw had been broken when he was punched behind his car, and Gagnon responded that he had no reason to doubt that statement.

Arthur did not testify at the trial. In closing argument, Arthur's attorney submitted that the State had not shown that it was Arthur's punch that broke Vasquez' jaw and caused great bodily harm. The jury found Arthur guilty of the lesser included offense of aggravated battery committed in a manner whereby great bodily harm could be inflicted.

Arthur moved for a new trial, raising several claims including that (1) the State should not have been allowed to present Gagnon's opinions about the causal mechanisms of facial injuries because they were not appropriately disclosed before trial and (2) the State had failed to produce *Brady* material about Brown's guilty plea to three counts of misdemeanor battery for his role in the attack. At sentencing on February 16, 2023, the district court denied Arthur's motion for a new trial. The district court sentenced Arthur to 12 months' imprisonment but granted probation for 24 months to be supervised by community corrections. Arthur timely appealed the district court's judgment.

DID THE DISTRICT COURT ERR BY PERMITTING GAGNON TO OFFER EXPERT TESTIMONY AFTER THE STATE FAILED TO PROVIDE ARTHUR WITH A SUMMARY OF HIS PROPOSED TESTIMONY BEFORE TRIAL?

Arthur first claims the district court erred by permitting the State to elicit expert testimony from Gagnon about the cause of Vazquez' broken jaw because the State "flagrantly disregarded its disclosure duties under K.S.A. 21-3212(b)." Arthur also argues that the district court erred by permitting Gagnon to testify about "possibilities rather than reasonable medical probabilities." The State responds that the court did not abuse its discretion by permitting Gagnon to testify and that, even if it did, any error was harmless.

This court reviews whether a district court appropriately sanctioned a party for failing to comply with discovery requirements of K.S.A. 22-3212 for an abuse of discretion. See *State v. Johnson*, 286 Kan. 824, 832, 190 P.3d 207 (2008) (noting that K.S.A. 22-3212(i)'s provision that a district court has the option to impose sanctions it deems "just" grants discretion in imposing an appropriate sanction for a discovery violation). Moreover, "[w]hether a witness—expert or layperson—is qualified to testify as to an opinion is to be determined by the trial court in the exercise of its discretion." *State v. Hubbard*, 309 Kan. 22, 43, 430 P.3d 956 (2018). "'"A trial court abuses its discretion when the act complained of '(1) is arbitrary, fanciful or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact.'"'" 309 Kan. at 43 (quoting *State v. Sasser*, 305 Kan. 1231, 1243, 391 P.3d 698 [2017]).

While the State endorsed Gagnon as a witness several months before trial and provided Vasquez' medical records to Arthur, it is undisputed that the State did not provide a summary or written report of Gagnon's proposed testimony before trial as required by K.S.A. 22-3212(b)(2). And subsection (i) of that statute authorizes the district court to exclude any expert witness testimony that was not properly disclosed. Arthur objected to Gagnon offering expert opinion testimony about which punch caused Vasquez' broken jaw. After allowing the parties to conduct a brief voir dire of Gagnon's potential testimony, the district court allowed Gagnon to testify as an expert witness, although the court noted that Gagnon's testimony was closer to that of a treating physician testifying as a fact witness. But because Gagnon was presented to the jury as an expert, not merely a fact witness, the question we must address is whether the district court appropriately sanctioned the State for its failure to disclose the substance of Gagnon's testimony before trial as required by K.S.A. 22-3212(b)(2).

When a party violates their duty to disclose a written summary of an expert's proposed testimony, K.S.A. 22-3212(i) provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, *or it may enter such other order as it deems just under the circumstances*." (Emphasis added.)

Here, after it became apparent that the State had not provided a summary of Gagnon's proposed testimony and that no expert report had ever been prepared, the district court allowed the parties to voir dire Gagnon to determine the substance of the proposed testimony. After the parties conducted a brief voir dire, Arthur's counsel objected, arguing that Gagnon should not be allowed to answer hypothetical questions about the number of punches thrown or whether a single punch could cause a broken jaw. But Arthur's attorney conceded, "It's kind of harmless if you allow it, but I don't think that should come in. Everything else I'm fine with."

The district court determined that, despite the State's failure to provide a written report, Gagnon's testimony would be admissible. The district court first explained that Gagnon's opinion that a single punch could cause a broken jaw was an incidental opinion allowed by *Thompson v. KFB Ins. Co.*, 252 Kan. 1010, 850 P.2d 773 (1993). Next, regarding his answers to hypothetical questions, the district court found Gagnon's answers were not prejudicial, especially considering his concession that he did not know exactly how or when Vazquez' jaw was broken during the fight. The district court added that Gagnon's testimony was not misleading and did not create any issues of unfair surprise because the State had provided Arthur with Vazquez' medical records.

Arthur contends that the district court committed an error of law in deciding not to sanction the State for its discovery violation and in treating Gagnon as a fact witness rather than an expert. But the district court did not treat Gagnon as a fact witness. Gagnon testified as an expert, not merely a fact witness, and the district court instructed the jury

how to assess the testimony of an expert witness. The district court's comment that Gagnon's testimony was like the nonexpert opinion testimony of a treating physician did not constitute an error of law.

Arthur challenges the part of Gagnon's testimony stating that a single punch could cause a broken jaw but that multiple punches could also each contribute to such an injury. The district court's decision to permit this testimony despite the State's discovery violation was not an abuse of discretion. While the State did not disclose a summary of Gagnon's testimony before the trial, the district court's determination that Gagnon's testimony did not mislead the jury and did not cause any prejudice to Arthur is sound. Other than his documentation of his treatment of Vazquez' injury, Gagnon emphasized that he did not know how the injury had occurred. He said that it was possible that Brown's first punch, not Arthur's last punch, could have caused the injury.

The focus of Gagnon's testimony was about his treatment of Vazquez, which was provided in the medical records the State had disclosed. Even when pressed by Arthur's counsel about hypothetical causation scenarios, Gagnon stated that he had no indication of how the injury occurred: "I see the injuries after it's done. I wasn't there, I don't know what happened." While the district court could have ruled that Gagnon's testimony was inadmissible as a sanction for the State's discovery violation, the court's decision to allow the testimony—after allowing Arthur to voir dire Gagnon—was fair and just under the circumstances. It cannot be said that no reasonable person would agree with the district court, and its decision was not based on an error of fact or law.

Next, Arthur argues the district court erred by permitting Gagnon to testify about "speculative medical possibilities regarding both causation of a broken jaw and potential consequences ensuing from anesthesia." But Arthur's objection to Gagnon's testimony at trial was based mainly on the State's discovery violation, not on the substance of Gagnon's testimony. K.S.A. 60-404 precludes an appellate court from reviewing an

8

evidentiary challenge absent a timely and specific objection made on the record. *State v. Ballou*, 310 Kan. 591, 613-14, 448 P.3d 479 (2019). Likewise, a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. George*, 311 Kan. 693, 701, 466 P.3d 469 (2020).

Even if this claim is preserved for appeal, Arthur's argument is meritless because Gagnon's statement about the potential causes of a broken jaw and complications caused by anesthesia were based on his professional opinion to a reasonable degree of medical probability. This court has explained that "[t]he expressions 'probably,' 'more likely than not,' and others of similar import are proper qualifications for a medical expert's opinion testimony if, taken as a whole, the testimony reflects an honest expression of professional opinion as to reasonable medical probabilities." *George v. Pauly*, 30 Kan. App. 2d 444, Syl. ¶ 5, 45 P.3d 1 (2001). Gagnon was qualified as an expert witness. In fact, Arthur stipulated to his qualifications. And when Gagnon was asked by both parties about potential causation of facial injuries, he stated that based on his training and experience, he believed that a single punch could cause a broken jaw but that multiple punches potentially increased the possibility of such an injury. When taken as a whole, Gagnon's testimony was based on a reasonable degree of medical probability. Thus, the district court did not err in admitting Gagnon's testimony.

### DID THE DISTRICT COURT ABUSE ITS DISCRETION BY DENYING THE MOTION FOR NEW TRIAL BASED ON THE ALLEGED *BRADY* VIOLATION?

Next, Arthur claims the district court abused its discretion by denying his motion for new trial based on an alleged *Brady* violation because the State failed to disclose that Brown pled guilty to three counts of misdemeanor battery for his role in the attack on Vazquez. Arthur contends that Brown's plea deal was exculpatory evidence because he could have used the information to impeach Vasquez' testimony at the trial. The State

9

maintains there was no *Brady* violation because any evidence of Brown's plea deal had no bearing on whether Arthur was guilty of committing his own battery against Vazquez.

"A prosecutor's suppression of evidence favorable to the accused is a violation of a defendant's due process rights under the Fourteenth Amendment to the United States Constitution." *State v. Soto*, 301 Kan. 969, 978, 349 P.3d 1256 (2015) (citing *Brady*, 373 U.S. at 87). Whether such a violation occurred is a legal question, reviewed de novo with deference to any factual findings. That said, the district court's denial of Arthur's motion for new trial based on his *Brady*-based claim is reviewed under an abuse of discretion standard. This court will only find that a district court abused its discretion if the court applied an incorrect legal standard, misapplied the appropriate legal standard, or relied on erroneous findings of fact. *State v. Breitenbach*, 313 Kan. 73, 97, 483 P.3d 448 (2021).

Prosecutors have an affirmative duty to disclose evidence that favors the accused if that evidence is material to either guilt or punishment. *State v. Warrior*, 294 Kan. 484, Syl. ¶ 7, 277 P.3d 1111 (2012). There are three essential components to establish a *Brady* violation:  "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be material so as to establish prejudice." 294 Kan. at 506.

As for the first component, Arthur argues evidence of Brown's plea deal was favorable impeachment evidence that he could have used to question Vazquez' credibility about his recollection of who punched him. In his written statement to the police, Vasquez indicated that he believed that the first punch from one of the men who hit him behind his car had broken his jaw. At trial, Vasquez testified that he was not sure which punch had broken his jaw. Arthur contends that he could have used the evidence of the plea deal to question Vasquez about his motive for "his change in story." This argument is somewhat of a stretch. Arthur used Vasquez' written statement at trial to impeach his

recollection of which punch may have broken his jaw. And because the entire incident was recorded, the jury could see each punch and make its own assessment about which attacker may have caused Vasquez great bodily harm. Evidence of Brown's plea deal would have provided minimal impeachment value for Arthur's case.

Under the second component, "prosecutors have a positive duty to disclose evidence favorable to the accused when 'the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *Warrior*, Kan. at 505-06 (quoting *Brady*, 373 U.S. at 87). Brown's plea deal was a matter of public record. In fact, the State had made the same plea offer to Arthur before his trial. Had the State called Brown as a witness, the State would have been expected to disclose the plea agreement with Brown. Arthur cites no legal authority to support his assertion that the State's plea agreement with a codefendant who does not testify at trial amounts to evidence that the State must disclose under *Brady*.

But even if Arthur has satisfied the first two components under *Brady*, he also must show that the evidence is material so as to establish prejudice. *Warrior*, 294 Kan. at 506. "'[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" 294 Kan. at 507. In ruling on Arthur's motion for a new trial, the district court found that Brown's plea agreement was not material. The district court explained that Brown's plea did not establish that he was solely responsible for Vazquez' injuries, and the evidence showed that it was unclear which punch caused the broken jaw.

The State charged Arthur with one count of aggravated battery by knowingly causing great bodily harm to Vasquez, a severity level 4 offense. But the jury found Arthur guilty of the lesser offense of aggravated battery committed in a manner whereby great bodily harm could be inflicted, a severity level 7 offense. The thrust of Arthur's

defense at trial was that the State had not shown that it was Arthur's punch that broke Vasquez' jaw. On this crucial point, Arthur prevailed. The jury heard the evidence and saw the video showing all three men striking Vasquez, but it was unclear which punch may have broken his jaw and caused great bodily harm. As a result, the jury found Arthur guilty of the lesser offense—a verdict that was clearly supported by the evidence.

There is no reasonable probability that evidence of Brown's plea would have resulted in a different outcome at trial. The primary evidence presented by the State was the surveillance footage. Arthur's counsel was able to impeach Vazquez about the inconsistencies between his written statement to the police and his testimony at trial. But the jury was also able to watch the entire event themselves. As Vazquez testified, the fight happened quickly, and he was not sure who hit him and when—but he was sure that the video showed exactly what happened. And the video showed that Arthur, Brown, and Salazar all landed punches on Vazquez that could have potentially broken his jaw. Considering the strength of the State's case, it cannot be said that the details of Brown's plea would have changed the result of the trial. Arthur fails to establish a *Brady* violation, and the district court did not abuse its discretion in denying a new trial on this ground.

DID CUMULATIVE ERROR DEPRIVE ARTHUR OF A FAIR TRIAL?

Finally, Arthur argues that cumulative error deprived him of his right to a fair trial. The test for cumulative error is whether the totality of the circumstances establish the defendant was substantially prejudiced by cumulative errors and thereby denied a fair trial. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). When, as here, there are no errors that the record has shown, the cumulative error rule does not apply. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

Affirmed.